[Civ. No. 22265. Second Dist., Div. One. Aug. 15, 1957.]

RICHARD L. COZAD, Appellant, v. BOARD OF CHIRO-PRACTIC EXAMINERS, etc., et al., Respondents.

_____
*Assigned by Chairman of Judicial Council.

Fred N. Howser for Appellant.

Edmund G. Brown, Attorney General, and Edward M. Belasco, Deputy Attorney General, for Respondents.

WHITE, P. J.—Appellant, a licensed chiropractor, appeals from an adverse judgment in his action seeking a declaration that section 651 of the Business and Professions Code and section 311 of the California Administrative Code are unconstitutional and void and an injunction permanently restraining respondents from enforcing the provisions of those sections against appellant because of certain of his advertisements.

Defendant Board of Chiropractic Examiners is a Division of the Department of Professional and Vocational Standards of the State of California (Bus. & Prof. Code, §§ 100-101(r)) and is the official body charged with the administration and enforcement of that certain initiative act approved November 7, 1922, known as the Chiropractic Act, setting of standards, conducting investigations of violations of laws under its jurisdiction, issuing citations and holding hearings for the revocation of licenses, and the imposing of penalties following such hearings. (Bus. & Prof. Code, § 108.) The other defendants are the present duly appointed and acting members of said board.

The court found that plaintiff is a member of the Basic Diagnostic Office, which is an unincorporated association of eight licensed chiropractors and Fred Besuzzi, who is not so licensed. Fred Besuzzi acts as business manager and has loaned money or credit to the licensed members to enable them to open or buy offices and equipment under the association name of Basic Diagnostic Office.

The advertisements attached as exhibits to plaintiff's complaint and defendants' answer, and introduced in evidence

were published, one on October 16, two on November 7, and one on November 28, 1955. The advertisement of October 16 was as follows:

"$5 EXAMINATION $5
PROTECT YOUR LIFE
With Our Complete Physical
and X-Ray Examination

| | |
|---|---|
| LIFE | DEATH |
| CAN BE PROTECTED | OFTEN IS DUE |
| BY A THOROUGH | TO NEGLECT OF YOUR |
| PHYSICAL EXAMINATION | PHYSICAL CONDITION |

YOU WANT FACTS—NOT GUESSWORK

NO QUESTIONS ASKED REGARDING YOUR ILLNESS

Without asking you a single question regarding your sickness we will show you the cause of your trouble, where it is and what to do. Isn't that what you want to know.

MOST ORGANS NOW VISIBLE

We can see your heart, lungs, bronchi, spine, stomach, large and small intestines, etc. We note the defects, deformities, diseases, of faulty functioning and then prescribe the correct treatment to restore your health. Other mechanical and electrical devices register your blood pressure, pulse, heart and other functional or organic deficiencies—precision instruments that are the very latest in

SCIENTIFIC DIAGNOSIS

What is it worth to you to know the truth about your ailment —no guess work—just facts—plain scientific facts. HEAD-TO-TOE EXAMINATION SHOWS CONDITION OF SINUS, EARS, NOSE AND THROAT—LUNGS AND RESPIRATORY TRACT—SPINAL VERTEBRAE AND BONE STRUCTURE—PULSE AND HEART ACTION— BLOOD PRESSURE—STOMACH—KIDNEYS—COLON PROSTATE— FEMALE ORGANS — GLANDS — NERVOUS SYSTEM — LIVER AND GALL BLADDER"

(Following the above were the name, address, telephone number, and office hours of the plaintiff.)

The three advertisements published in November after the filing of the complaint, copies of which are attached to defendants' answer, are much the same, except that they commence with an introductory paragraph similar to the following:

"$5 EXAMINATION $1

"In order to introduce our service to the people of Southern California, the Los Angeles County Diagnostic Association has

established the price of our regular $5.00 examination to be only $1.00 for the next seven days, when this ad is presented by you. This policy prevails at all the Basic Diagnostic Offices listed below.

"PROTECT YOUR LIFE"

The court found that each of said advertisements of the plaintiff "contained misstatements, misrepresentations, distorted and sensational statements, and had a tendency to deceive the public and impose upon credulous or ignorant persons in the following particulars:

"1. It is misleading to advertise that a person trained in chiropractic can, generally, show a member of the public coming to him for examination the cause of an alleged illness, where it is, and what to do about it without asking the prospective patient a single question.

"2. It is a misstatement and a distortion of fact to advertise: 'Most organs now visible. We can see your heart, lungs, bronchi, spine, stomach, large and small intestines, etc.' when in fact these organs are not actually visible to the human eye with or without instruments and mechanical devices; that all plaintiff does during his examination of prospective patients is to place the prospective patient before a fluoroscope, where mere shadowy outlines of the said organs are viewed by plaintiff; further, no permanent X-ray picture is taken at said examination.

"3. It is imposing upon credulous and ignorant persons and has a tendency to deceive them to advertise that as the result of the type of examination given by plaintiff which includes a fluoroscopic examination, the taking of blood pressure on a baumometer, the hemoglobin count in a blood test, a superficial examination of eyes, ears, nose and throat by use of an ostescope and the listening to the heartbeats on a sound amplifying device, it is possible generally to prescribe correct treatment and restore the health of persons who are ill.

"That these examining procedures used by plaintiff result in fact in only preliminary evaluations of the physical condition of a person examined and have no inherent therapeutic value."

The court also found "That on October 20, 1955, the defendant Board officially advised plaintiff by letter that his advertising, as described above, would possibly violate section 651 of the Business and Professions Code of the State of California and advised plaintiff in his future advertising to follow the legal requirements set forth in (rule 311) sec-

tion 311 of article 2 of chapter 4 of title 16 of the California Administrative Code; that thereafter, despite this warning, plaintiff continued to insert similar advertisements in newspapers of general circulation in Los Angeles County.''

And the court further found that each of the three advertisements published November 7th and 28th ''in which a five dollar examination was offered for one dollar, is an advertisement whereby plaintiff offered to render services as a chiropractor at a discount and for a fee less than the average fee regularly charged for such service and at a discount.''

From those findings the court concluded that the defendants proceeded pursuant to the provisions of the Chiropractic Act; that section 651 of the Business and Professions Code is a definite, clear and certain statute and is constitutional; that section 311 of article 2, chapter 4, title 16, California Administrative Code, known as ''Rule 311,'' is a definite, clear and certain rule duly and regularly adopted by the Board of Chiropractic Examiners and is constitutional; that the offer in the advertisement published October 16, 1955, to give an examination for $5.00 is price advertising, but does not violate the provisions of section 651; that the offers in the three advertisements published in November to give a $5.00 examination for $1.00 are discount price advertising and violate the provisions of section 651; and that each of the four advertisements ''contain assertions concerning medical matters and the diagnosis and treatment of ailments which are misrepresentations, misstatements, distortions and have a tendency to deceive the public and impose upon credulous or ignorant persons who need or believe they need medical attention and are in violation of Section 651 of the Business and Professions Code.''

Appellant's specifications of error are as follows: ''Each and every finding of fact was unjustified and unsupported by the record because:

''1. Rule 311 is vague, indefinite, ambiguous and inconsistent with other statutory provisions and therefore unconstitutional;

''2. Rule 311 was unconstitutionally applied to the facts at bar;

''3. Section 651 is invalid for uncertainty, indefiniteness and ambiguity;

''4. Section 651 was unconstitutionally applied to the facts at bar.''

Rule 311 provides that: ''Constructive educational publicity

is encouraged, but the use by any licensee of advertising which contains misstatements, falsehoods, misrepresentations, distorted, sensational or fabulous statements, or which is intended or has a tendency to deceive the public or impose upon credulous or ignorant persons, constitutes grounds for the imposition of any of the following disciplinary penalties; (a) Suspension of said licensee's right to practice in this State for a period not exceeding one (1) year. (b) Placing said licensee upon probation. (c) Taking such other action, excepting the revocation of said license as the board in its discretion may deem proper."

Appellant questions respondent board's power to adopt or enforce rule 311. His premise is that said rule 311 conflicts with general statutory provisions, specifically sections 17500 and 17500.1 of the Business and Professions Code which, appellants contend, "completely cover the problem of false advertising."

The provisions of section 17500 applicable to the instant action are that it is unlawful for any person intending to perform services to advertise "any circumstance or matter of fact connected with the proposed performance . . . which is *untrue* or *misleading*." (Emphasis added.)

Section 17500.1 provides that: "No state board or commission . . . shall enact any rule or regulation which shall restrict or prohibit advertising by any . . . professional person, . . . which does not violate the provisions of Section 17500 of the Business and Professions Code. Any existing rules or regulations conflicting with this section are hereby repealed . . . ."

Reading the two sections together, respondent board is powerless to prohibit or restrict advertising which is not untrue or misleading.

In *California Emp. Com.* v. *Butte County etc. Assn.*, 25 Cal.2d 624 [154 P.2d 892], the challenged validity of an administrative rule defining "agricultural labor" promulgated by the California Employment Commission was considered and, at page 632, the court said:

"Considering at the outset the challenge of the validity of rule 7.1, the objection is not well taken. Where the Legislature has by its enactments declared policies and fixed primary standards, as it did in the Unemployment Insurance Act, there can be no question but that it may validly confer on administrative officers power to 'fill up the details' by prescribing rules and regulations to promote the spirit and pur-

pose of the legislation and its complete operation. In its general form of distinction, rule 7.1 appears to be a practical, workable definition in amplification of the unexpanded statutory exemption here presented.''

Respondents urge that rule 311 is a ''filling in of details'' as in the California Employment Commission case, *supra.* Appellant contends, however, that rule 311 ''does not constitute a filling in of details,'' but is an attempt by respondent board to prohibit and restrict advertising which does not violate said section 17500. Actually, rule 311 specifies the disciplinary penalties to be imposed by respondent board upon chiropractors for advertising misstatements, falsehoods, mis-representations (all of which are *untrue*) or distorted, sensational or fabulous statements, or any statements intended to or having a tendency to deceive the public or impose upon credulous or ignorant persons (all of which are *misleading*). The respondent board, in enacting rule 311 was performing its duty to enforce the Chiropractic Act and ''to promote the spirit and purpose'' thereof.

Appellant contends that the court erred in failing to construe strictly the statute and the rule as required because of the penal nature and serious consequences of the proceedings thereunder. However, an administrative board or a trial court is not required to ''conduct its proceedings for the revocation of a license in accordance with theories developed in the field of criminal law.'' (*Webster* v. *Board of Dental Examiners,* 17 Cal.2d 534, 537-538 [110 P.2d 992].) The instant action is not one for the revocation of a license, but one where the licensee seeks to enjoin the enforcement of a statute and an administrative rule, and a declaration that said statute and rule are unconstitutional. It is not an action which would have been conducted as a quasi-criminal proceedings, even before the Webster decision, *supra.* Nevertheless, ''the requirement that a law be definite and its meaning ascertainable by those whose rights and duties are governed thereby applies not only to penal statutes, but to laws governing fundamental rights and liberties.'' (*Perez* v. *Sharp,* 32 Cal.2d 711, 728 [198 P.2d 17].) The right to practice chiropractic is a valuable property right entitled to be protected and secured. (*Hewitt* v. *State Board of Medical Examiners,* 148 Cal. 590, 592 [84 P. 39, 113 Am.St.Rep. 315, 7 Ann.Cas. 750, 3 L.R.A.N.S. 896].)

Appellant states that it is ''apparent that rule 311 should be invalidated by reason of its vagueness, indefiniteness

and ambiguity," and cites *Drucker* v. *State Board of Medical Examiners,* 143 Cal.App.2d 702 [300 P.2d 197] ; and *Hewitt* v. *State Board of Medical Examiners, supra.*

In the Hewitt case, *supra,* where the statute defined unprofessional conduct of a physician as including "all advertising of medical business in which grossly improbable statements are made," the statute was declared unconstitutional and the court, at page 593, said: "No definite standard is furnished by the law under this provision whereby a physician with any safety can advertise his medical business; nor is there any definite rule declared whereby after such advertisement is had the board of medical examiners shall be controlled in determining its probability or improbability. The physician is not advised what statements he may make which will not be deemed 'grossly improbable' by the board. No rule is provided whereby he can tell whether the publication he makes will bring him within the ban of the provision or not." The facts of the Hewitt case are not analogous to those of the instant action. Under the statute there involved, although it was ostensibly an exercise of the police power to protect the public health and safety, *grossly improbable* statements were prohibited regardless of their truth or falsity, whether they were beneficial or injurious, and any intent or tendency to deceive or mislead credulous or ignorant persons was immaterial. Rule 311, being considered in the instant action, will not be violated so long as a chiropractor advertises only that which is not *untrue* or *misleading.*

*Drucker* v. *State Board of Medical Examiners,* 143 Cal.App. 2d 702 [300 P.2d 197], does not aid appellant in the case at bar. In that case, this court decided that the words "furnish," "employ" and "maintain" have definite and certain meanings and that the evidence did not support the order of the defendant board revoking a dispensing optician's license for violation of a regulation using those terms.

Appellant contends that the phraseology of rule 311 "commits to respondent agency the capricious determination of what is meant by the words 'fabulous' and 'sensational'." He does not claim to be ignorant or doubtful as to the meanings of the words "misstatements," "falsehoods," "misrepresentations" and 'distorted statements." Reading rule 311 in its entirety, considering it in connection with the Chiropractic Act and sections 17500 and 17500.1 of the Business and Professions Code, as we are required to do, and giving

to the questioned words the meanings which are reasonable in the context in which they are used, we are persuaded that the words "fabulous statements" were used in the sense of statements feigned, imaginary or pretended and not real or truthful; and that the words "sensational statements" were used to mean melodramatic, theatrical, artificial or exaggerated, not real or true.

██ That is certain which can be made certain by simple reference to the dictionary, and where, as here, the words used in the rule or regulation sought to be invalidated have meanings which do not conflict with the statute, an appellate tribunal will presume that they were used in the sense which complies with and does not violate the statute.

Section 651 of the Business and Professions Code provides: "It is unlawful for any person licensed under this division . . . to offer to render or to render any service under the representation that the . . . fee which is to be or is charged for such . . . service . . . is at a discount, or under the representation that the . . . fee . . . is a percentage or otherwise less than the average fee . . . then regularly charged under like conditions by the person so licensed or by other persons for such . . . service. The provisions of this section shall not be construed to modify or establish . . . fees or to modify or affect in any manner any other provisions of this division."

██ Appellant urges that said section 651 is invalid for uncertainty, indefiniteness and ambiguity; that since the section commences with the language "It is unlawful" it is penal in nature and its language must be strictly construed; and that "it is a statute which forbids the doing of an act in terms so vague that men of common intelligence must necessarily speculate as to its meaning" and consequently it must be declared unconstitutional, citing *Wotten* v. *Bush,* 41 Cal.2d 460, 464 [261 P.2d 256]. The Wotten case, however, decides only that the expression " 'field producing oil or gas' has an understandable meaning in the industry"; that the statute there considered was not void for uncertainty; and that the delegation of power made by the statute there in question was limited by sufficient criteria to avoid any implication that it was an unlawful delegation of legislative discretion. The facts of the Wotten case are in no way similar to those of the instant action.

Specifically, appellant's complaints regarding section 651 are: (a) that the portion thereof prohibiting the advertising of discounts etc. "assumes to modify fees" and is not

reconcilable with the closing provision that the section shall not be construed to modify or establish fees; (b) that the phrase "under like conditions" is ambiguous; that (presumably in good faith) appellant and his associates established certain special conditions which involved the giving of a regular examination for the sum of $1.00, such conditions being the introduction of their services to the people of the area; and that respondents failed to produce "a shred of evidence that similar introductory offers were or were not given by chiropractors in the area concerned or that the fees here charged were not commensurate with the services rendered."

Without conflict the evidence is that there are in California approximately 5,400 licensed chiropractors, about 4,300 practicing, two-thirds of them in Southern California; that the advertisements now engaging our attention were published pursuant to the decision of only the eight chiropractors of the Basic Diagnostic Office.

Section 651 does not say that it is unlawful to render service at any price, high or low or even without charge, but it merely provides that it is unlawful to offer to render services under a representation that the fee to be charged is less than the regular fee. The phrase "under like conditions" has a definite meaning and could not, in our opinion, have misled appellant into the belief that it was not unlawful to advertise "$5 Examination $1," which was intended to and did mean to the reader that the examination regularly priced at $5.00 was for a limited time offered for $1.00. Appellant, himself, testified that the examination advertised for $1.00 was "the exact same examination" as the regular $5.00 examination.

■ Appellant further urges that the evidence does not support the findings that the advertisements "are misleading" or "impose upon credulous persons and have a tendency to deceive such persons."

According to the testimony, the organs of the patient could not be seen by the chiropractor, and, in the examination given pursuant to the advertisement, only shadows of such organs were viewed by plaintiff. By means of the fluoroscope and other instruments he could sometimes point out some health problems; some diseases could be so diagnosed; others could not; some patients were referred to a laboratory for further examination or X-ray pictures to be taken by the use of more

powerful X-rays than those used in fluoroscopy by plaintiff, but such laboratory tests and the taking of X-ray pictures was not a part of the advertised examination.

One chiropractor, testifying for appellant, was of the opinion that the examination described by plaintiff was better than that given by most chiropractors. Two others testified that they believed a "thorough physical examination" should include a detailed history of the patient's health from childhood to the date of the examination and required the asking of questions; and that the examination described by plaintiff was not such as would enable him to diagnose all diseases, or most diseases.

Although the advertisement includes the phrase "precision instruments that are the very latest in SCIENTIFIC DIAGNOSIS," and implies that plaintiff will use newer instruments than are generally used, the evidence is without conflict that all instruments used by plaintiff for the examination given pursuant to the advertisement are also used by other chiropractors and medical doctors and are standard equipment in all general hospitals.

The judgment is affirmed.

Doran, J., and Fourt, J., concurred.