Filed 9/12/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JIM L. IRVING, | B243417 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BS131983) |
| v. | |
| CALIFORNIA UNINSURANCE APPEALS BOARD, | |
| Defendant and Respondent; | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT, | |
| Real Party in Interest and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ann I. Jones, Judge. Reversed with directions.

No appearance for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

Richard Ettensohn, Assistant General Counsel, for Real Party in Interest and Appellant.

## I.  INTRODUCTION

The real party in interest, the Los Angeles Unified School District (the district), appeals from an order granting a mandate petition filed by plaintiff, Jim L. Irving. Defendant, the California Unemployment Appeals Board (the board), after an administrative hearing, refused to grant plaintiff unemployment compensation benefits pursuant to Unemployment Insurance Code section 1256.[1]  The trial court issued a writ of mandate directing that plaintiff receive unemployment compensation benefits.

We conclude plaintiff's actions in exceeding his break times on four separate occasions and then falsifying his time sheets constitutes misconduct within the meaning of section 1256.  Because he committed misconduct within the meaning of section 1256, he may not receive unemployment compensation benefits.  Thus, the judgment issuing the writ of mandate must be reversed.

## II.  THE PLEADINGS

On May 11, 2011, plaintiff, in propria persona, filed a mandate petition challenging the board's decision denying his request for unemployment compensation benefits.  The petition alleges:  on August 21, 2010, an accusation was filed with the board alleging plaintiff had violated Code of Civil Procedure section 1094.5; a hearing was held before an "administrative judge" who rendered a proposed decision; on September 27, 2010, the board adopted the decision as its own, effective October 18, 2010; plaintiff appealed on October 19, 2010 to the board; and on December 13, 2010, the board mailed its decision to plaintiff.  According to the mandate petition, a copy of the board's decision is attached.  However, no such decision is attached to the mandate petition.

---

[1]  Future statutory references are to the Unemployment Insurance Code unless otherwise indicated.

2

Plaintiff alleges the December 13, 2010 decision was invalid because: he was not granted a fair trial; no union steward was permitted to attend the hearing; the board committed a prejudicial abuse of discretion; the board abused its discretion by denying "his unemployment" compensation benefits; the board is a state agency whose authority is derived from the Legislature; he has exhausted all available administrative remedies; he does not have a plain, speedy and adequate remedy in the ordinary course of law; he intends at the hearing on the mandate petition to present evidence of selective enforcement; the board refused to allow him to present evidence; and the newly discovered evidence was attached as exhibits B and C to the mandate petition. No exhibits are attached to the mandate petition.

Plaintiff alleges he has been damaged because of "storage" losses and his state income tax check was "intercepted" by the Employment Development Department. Further, plaintiff alleges: he has no permanent income due to the economy; the board was liable for these damages because he did not receive any type of warning letter or supervisor acknowledgment; the district acted upon personal and racist motives; and he had filed a government claim. The prayer for relief seeks to have the board set aside its December 13, 2010 order which denied him unemployment compensation benefits. Further, plaintiff seeks to recover his costs including vacation pay, unemployment compensation benefits, items that were sold "from his storage" and wages loss.

On December 9, 2011, the district filed its answer. The district entered a general denial. In addition, the district alleges as affirmative defenses: the mandate petition fails to state facts sufficient to constitute a cause of action; plaintiff has failed to exhaust his administrative remedies; and any recovery is barred by the applicable statutes of limitations.

## III. ADMINISTRATIVE RECORD

On May 13, 2010, plaintiff received a notice of unsatisfactory service from the district. The unsatisfactory service notice alleges plaintiff: willfully or persistently

violated written rules; engaged in work related dishonesty; made false or misleading statements in an official document; and participated in the unauthorized use of district property. The unsatisfactory service notice alleges plaintiff: exceeded his allowable 20-minute break periods; took his rest period during the last hour of his assignment; and falsified his Daily Truck and Time Report slip (time records). The unsatisfactory service notice identifies 10 days where plaintiff's break periods exceeded 20 minutes between March 9 and April 7, 2010, and occurred during the last hour of his shift. Plaintiff had been instructed he was not to take a break during the last hour of his shift nor outside district boundaries. The notice concludes: "[Plaintiff] knows the department rules and regulations regarding the limitations upon lunch and rest periods; that such lunch and rest periods shall not be taken outside of [district] boundaries; that he must accurately document his activities for the day on the Daily Truck and Time Report slip; and he must wear a seat belt at all times while operating a [district] vehicle. For the foregoing reasons it is recommended that he should be immediately suspended pending dismissal from his probationary position."

On July 26, 2010, the Employment Development Department issued a notice of determination concerning plaintiff's unemployment compensation benefits claim. Directed at the district, the notice of determination states: "You discharged the claimant for not performing the work to your satisfaction. After considering the available information, the department finds the reasons for discharge do not meet the definition of misconduct connected with the work." The district was advised of its right to appeal.

On August 16, 2010, Alfred Sixtos, a district assistant truck operations manager, appealed from the department's unemployment benefits award to plaintiff. The appeal paperwork states: plaintiff was hired as a probationary heavy truck driver on December 7, 2009; on May 3, 2010, plaintiff attended a pre-disciplinary conference to discuss 10 instances of misconduct including loitering and time record falsification between March 9 and April 7, 2010; on May 13, 2010, plaintiff was issued an unsatisfactory service notice; on May 14, 2010, plaintiff was suspended pending dismissal from his probationary position; and effective June 23, 2010, plaintiff was dismissed from his

4

probationary position because he failed to comply with department policy, falsified time reports and neglected to accurately document his activities.

On September 14, 2010, the department issued an administrative hearing notice. The administrative hearing was scheduled for September 27, 2010. The hearing notice identifies the following issue to be considered at the hearing: "Did [plaintiff] voluntarily leave his . . . most recent employment without good cause. Was [plaintiff] discharged for misconduct connected with his . . . recent work."

## IV.  SEPTEMBER 27, 2010 ADMINISTRATIVE HEARING

Two witnesses, Mr. Sixtos and plaintiff, testified at the September 27, 2010 hearing before the administrative law judge. At the administrative hearing, Mr. Sixtos, the district's assistant truck operations manager, testified plaintiff's shift ran from 2:30 to 11 p.m. Mr. Sixtos testified plaintiff was dismissed for policy violations after an investigation. Mr. Sixtos described the policy violations. To begin with, plaintiff violated district rules regarding breaks and lunch. When plaintiff was hired, he was advised of the district policy concerning the duration of breaks and where they may be taken. On February 4, 2009, plaintiff signed a written acknowledgment which explained the limitations on breaks and where they could be taken. Mr. Sixtos testified, "A driver gets two [10]-minute breaks or one 20-minute break and not in the first or last hour, and one 30-minute lunch period to have occurred between the fourth and sixth hour of their starting time." Drivers were free to take their breaks as they saw fit so long as it was within the mandated time restrictions. Plaintiff did not adhere to limitations on break and lunch periods. Truck drivers were prevented from taking lunch or breaks outside the district boundaries or "around the vicinity of Pico Rivera." In addition to the foregoing violations concerning the timing and location of breaks, plaintiff falsified his time records.

Mr. Sixtos explained the district policy concerning the location of break and lunch periods: "[E]ven though we are LA Unified School District, our warehouse and facility

5

is located in the City of Pico Rivera. . . . [W]e do not allow our drivers to take any lunch breaks in the vicinity of . . . City of Commerce, Whittier, Downey, the local cities. We ask our drivers to take their lunch and breaks inside the district boundaries." Mr. Sixtos also testified: "Drivers use [time records] to document where [they are] at during the course of their day and stops, lunch, and so on. His [time records] did not match on certain days where the vehicle and [plaintiff] were at that time." The district used a global positioning system to verify where its truck drivers were located at any time during their shifts.

The district was conducting an investigation of another of its drivers. During that investigation, Mr. Sixtos uncovered evidence of defendant's violations of district policy and falsehoods. Mr. Sixtos discovered that between Tuesday, March 9 and Wednesday, April 7, 2010, plaintiff took 10 breaks or lunch within the last hour of his shift. Further, on these 10 occasions, the break was taken in the cities of Commerce, Rosemead and Downey, not within the district's boundaries. Plaintiff's violations of these rules were documented by the global positioning system's analysis of the trucks he drove on the 10 days. Plaintiff falsely recorded his times and locations for each of the 10 days on the district's time records.

Plaintiff admitted he was told to take his breaks between the fourth and sixth hours of his shift. Plaintiff admitted he took breaks after the sixth hour. On February 4, 2009, plaintiff signed a document entitled, "**Warehouse Rules and Expectations – Truck Operations**." The document was given to plaintiff by Larry Turgeon, a truck operations manager. The document states in part, "A Driver . . . may not take their breaks or lunch in the first or last hour of their shift. . . . [¶] . . . Employees are expected to carefully adhere to their assigned break times and promptly return to work once break time is over." Mr. Sixtos described the district's rest policy, "A driver receives two ten-minute breaks or one 20-minute break and not in the first or last hour, and one 30-minute lunch period to have occurred between the fourth and sixth hour of their starting time." Drivers were to take their lunch breaks inside district boundaries.

6

On May 3, 2010, plaintiff attended a pre-disciplinary conference to discuss 10 instances of misconduct including loitering and record falsification occurring between March 9 and April 7, 2010. At the May 3, 2010 meeting, when confronted with the misconduct allegations, plaintiff described his response: "I told them at - - at the meeting, and they - - was like, okay, well, instead it's irrelevant. You took this, you did this, or whatever. I said, okay, I made my mistake. I got - - [¶] . . . [¶] - - caught up."

At the May 3, 2010 pre-disciplinary conference, plaintiff said he could not eat his lunch safely at certain locations. But, plaintiff admitted that he could eat his lunch inside school grounds with the gates closed. Plaintiff admitted that the drivers would lock the gates behind them at the schools where it was safe to have lunch. In fact, drivers were free to use the cafeteria facilities at the schools. Mr. Sixtos had never heard any other drivers express any concerns about safety on the route assigned to plaintiff. Additionally, plaintiff had never complained to any supervisor about any concerns about safely eating lunch. If a driver had a concern about safety, a supervisor could be contacted via a district cellular phone which was issued to all drivers. Further, according to Mr. Sixtos, at the May 3, 2010 hearing, plaintiff denied taking a break during the last hour of a shift. This was contradicted by the global positioning system records.

At the administrative hearing, plaintiff admitted he was trained concerning when breaks were to be taken. Plaintiff was instructed he must take his breaks between the fourth and sixth hours of his shift. Plaintiff admitted on 10 occasions he took breaks in the City of Commerce which is outside the district's boundaries. And plaintiff admitted these breaks were not taken between the fourth and sixth hours of his shift. Nine of the ten breaks were taken during the last hour of his shift on March 9-12, 15, 17, 19 and 24 and April 5 and 7, 2010. Plaintiff admitted at the administrative hearing it was a mistake to take the breaks after the sixth hour of his shift.

On 10 occasions, plaintiff did not accurately document the timing of breaks which violated district rules. At the administrative hearing, plaintiff justified his failure to accurately document the timing of breaks as follows: "I didn't document those because on the breaks that I may have put on the sheet, I put in there for their purposes because

they had given us some kind of cheat sheet or whatever to follow off of, so I was like well, I -- I can't take it here, but I'm going to put it so that way I can cover myself to where it doesn't come back on me and hurt me." When confronted with the fact he placed incorrect times on his time records, plaintiff testified: "Right. Exactly, because a lot of times it was - - it was heavier than others or we had to go back and retrieve some other freight from the Newman Nutrition Center, and they was like, well, just put the break down there anyway. Don't - - it doesn't matter. Just put it down anywhere, so I - - I put it on my - - on my [time record] and just, you know, so - - and I have - - I have a documentation showing that they have posted in the -- break room." Plaintiff was asked whether he was instructed by anybody that if he exceeded his allotted breaks, he need not document that time on his time records. Plaintiff admitted nobody instructed him he need not document time spent which exceeded his allowable breaks.

On 4 of the 10 dates, plaintiff's break exceeded the 50-minute allowable time period. Plaintiff admitted he exceeded his total allotted break time on these four occasions. Further, plaintiff testified he falsely certified his time expenditures on his time records beginning in December 2009 because he was directed to so by unidentified management personnel. However, in terms of falsely certifying the extent of his breaks, plaintiff never testified he was directed to falsify that information. We will provide greater detail concerning plaintiff's testimony during the administrative hearing later in this opinion in our discussion of the merits. Plaintiff said he was going to complain in writing about his falsification of time records in writing but, "By the time I was going to put in writing, that's when they put me on suspension."

Plaintiff was told when he worked the *dayshift* he could fill out his time records so that it "looks good" in his words. (As noted, the misconduct which resulted in his termination occurred when he later worked on the evening shift.) Plaintiff testified: "Mr. Sixtos and Mr. Turgeon told us when we came into a meeting, a driver p.m. meeting, and says, okay, you guys are going to be working sometimes the dayshift, whatever, so you need to go and there's a  - - a sheet on the wall you need to follow. If you don't take your lunch within that time, don't worry about it. Just put on there the time they have on -- on

8

the sheet." Drivers had told management staff that it was impossible to drive the mail routes and eat lunch between 11:30 a.m. and noon. In terms of plaintiff's normal evening shift, he never testified such a deviation from the aforementioned work rules was authorized. Prior to testifying at the hearing, including during the three pre-suspension meetings, plaintiff never said he was ever instructed to falsify time records.

## V. ADMINISTRATIVE LAW JUDGE'S FINDINGS

The administrative law judge ruled: "[Plaintiff] contended that on some of the occasions when he took his meal break during the last hour of his shift, he had no alternative due to safety concerns. [¶] Although [plaintiff] initially testified that there were times when he took the breaks during the last hour even though there were no safety concerns, later he retracted his testimony and stated that every time he took the breaks during the last hour it was due to safety concerns. [Plaintiff's] testimony on this point was contradictory, inconsistent, and unreliable in character. Therefore it is concluded that [plaintiff] sometimes took meal breaks during the last hour even though there was no safety concern, in knowing violation of the employer's policies. [¶] Further, [plaintiff] testified that he did not accurately fill in his timecards because he had been explicitly instructed by the dispatcher, John Williams, to complete the [time records] so as to indicate that the meal breaks were taken at appropriate times even when that had not been the case. In support of this contention, [plaintiff] produced exhibits 11 through 13 which are daily truck and time reports for the morning shift which were posted as examples of how to fill out [time records]. [Plaintiff] testified that Mr. Williams had instructed him to complete his [time records] to indicate that lunch was taken at the exact time shown on Exhibits 11 through 13. However, each of these exhibits shows that the lunch period time was specifically marked as an 'example.'"

The administrative law judge continued: "The employer conceded that certain entries on the daily truck and [time records] were to be completed during the morning shift exactly as written on the exemplar [time records], but the lunch entries as stated on

9

the exhibit were examples only. There was no evidence that [plaintiff] ever raised the contention that he was instructed to falsify his [time records] at any of the disciplinary meetings and hearings. [¶] Furthermore, while [plaintiff] contended that he complained to the union shop steward regarded been instructed to falsify his [time records], [plaintiff], who generally keeps good records and safeguards evidence, did not present the complaints to the shop steward at the hearing. Furthermore, according to the employer's human resources representative, had such complaints been made they would have been forwarded to human resources personnel, but no such complaints were ever received." And the administrative law judge noted plaintiff, on June 17, 2010, sent an e-mail to the district's human resources staff. Plaintiff indicated that he had been targeted because of his race. Plaintiff complained he had never been told that he could not take breaks outside the district boundaries. To these complaints, the administrative law judge found: "Although [plaintiff] made these very explicit objections to the grounds for his discharge, the e[-]mail does not mention that he had been instructed to falsify his [time records]. For all these reasons, [plaintiff's] testimony that he was instructed to falsify his [time records] is disbelieved as unreliable, contradictory, inherently improbable, and based upon . . . weaker and less [satisfactory] evidence than was available to [plaintiff]."

The administrative law judge concluded: "[Plaintiff] breached his duties of loyalty, good faith and fair dealing to his employer and, if he took breaks earlier in the day as written on his [time records] and then followed them with additional breaks, he misappropriated his employer's property. [Plaintiff's] conduct constituted substantial and willful breaches of duty to the employer intended to damage the employer. As such, [plaintiff] was discharged for misconduct connected with his most recent work and is disqualified [from] benefits under . . . section 1256."

## VI.  JUDICIAL HEARING, FINDINGS AND JUDGMENT

### A.  Hearing In The Trial Court

On June 22, 2012, the hearing on plaintiff's Code of Civil Procedure section 1094.5 petition was held.  Despite the fact the hearing was conducted pursuant to Code of Civil Procedure section 1094.5, the trial court began by addressing plaintiff, who was appearing in pro se:  "This is the time of our trial. . . .  You can present your evidence.  You can make your arguments.  I'm all ears.  I'm going to take this under submission.  I don't have a tentative."  One of the lawyers indicated there was in fact a tentative ruling.  The trial court responded:  "Oh.  It shouldn't have been distributed.  [¶]  Grab it back.  [¶]  Well, you can obviously address yourself to it."  The trial court then asked a number of questions of plaintiff.  In response, plaintiff offered unsworn allegations concerning why his testimony at the administrative hearing was not corroborated in certain respects.  Plaintiff stated he committed no misconduct:  "The breaks that were taken were taken in context, because we had a door that was broken at the Nutrition Center where we had to drop off equipment at.  And we were told by higher-ups if we couldn't take our break at the correct time to pencil in, that way they wouldn't get in trouble with the -- it would be a federal violation."  Plaintiff stated during the hearing in the trial court the "higher-ups" who gave directions concerning breaks on the day shift were Mr. Sixtos and Mr. Turgeon.  Mr. Turgeon was the district's trucking department manager.

Plaintiff stated during the hearing before the trial court drivers were instructed to falsify time records in terms of the *timing* of breaks.  Plaintiff explained during the hearing before the trial court:  "They told us if the situation that happen out there, or you can't get your break in, because a lot of time we were working lights, and there were safety hazards out there that we had vendor away from, [Mr.] Turgeon came into a meeting and told us, said:  'If you cannot get your break in.  Just put a time in so that way it will coincide with the time we want you to take your break.'  So that way there won't be any kind of federal grievance against them, or they won't get in trouble by the federal

transportation department." When plaintiff attempted to fill out a time record "exactly like I ran it," he was told by unspecified supervisors: "'No, don't do it that way. Do it the way it is on the board, otherwise you won't get paid.'" Plaintiff told the trial court if he submitted an incorrect time record, it would be returned to him.

The trial court raised the issue with plaintiff about failing to report the alleged order to falsify time records. The following occurred: "The Court: And then you were asked by the [administrative law judge] on that day, when you knew they were telling you to falsify your time records, was essentially why didn't you go to upper management and say you're telling us to falsify. And you responded, that I've been told by Mr. [Sixtos]. He was upper management. [¶] [Plaintiff]: Right. Exactly. [¶] The Court: And he told me to do it. 'Question: What do you mean?['] [¶] 'He was telling me what to do.' [¶] Fair enough? [¶] [Plaintiff]: Exactly yes ma'am. And Mr. [Turgeon]."

Additionally, plaintiff argued that he was terminated because of an alleged seatbelt violation. According to plaintiff, the seatbelt charge was dismissed by "an East L.A." judge. Plaintiff also told the trial court other truck drivers engaged in the same conduct and were not disciplined. At the conclusion of the questioning of plaintiff by the trial court, counsel for the district and the board made brief comments. The matter was taken under submission.


### B. Findings And Judgment


On June 25, 2012, the trial court filed its ruling on plaintiff's mandate petition. The trial court found plaintiff was employed for approximately five months as a "Heavy Truck Driver" from December 7, 2009 through May 13, 2010. Plaintiff acknowledged he was instructed during his training that he was to take a break between the fourth and sixth hours of his work shift. Plaintiff worked or between 2:30 and 11 p.m. Thus, he was instructed his break between 6:30 and 8:30 p.m. In terms of inaccuracies in his break times, the trial court ruled: "[Plaintiff] signed the 'Warehouse Rules and Expectations -- Truck Operations' form which acknowledged [plaintiff's] understanding that breaks were

12

not to be taken during the first and last hours of the work shift. . . . [Plaintiff] admitted to taking breaks after the sixth hour of his shift and conceded that he took 10 breaks from March 9, 2010-April 7, 2010 at times as early as 9:14 p.m. until as late as 10:38 p.m. . . . Furthermore, [plaintiff] admitted that he failed to properly document the break times he reported on his timesheets because the 10 breaks he took between March 9, 2010-April 7, 2010] were not accurately reported in [plaintiff's time records]; instead, [plaintiff] reported that he had taken the breaks earlier in the day when he had actually taken the breaks beyond the sixth hour of a shift. . . . Finally, [plaintiff] admitted to having exceeded his permitted break time on at least [four] occasions and that [plaintiff] did not properly document these breaks on his timesheets. . . . [Plaintiff] understood that he was certifying false times. . . ." Later in its written ruling, the trial court found the following: "[T]he weight of the evidence . . . demonstrates [plaintiff] falsified his [time records] on multiple occasions and repeatedly violated [the district's] break policies. [Plaintiff's] conduct of repeatedly falsifying his [time records] and repeatedly violating [the district's] break policy arises to the level of misconduct."

Thereafter, the trial court ruled: "[Plaintiff] testified credibly that he filed incorrect work records because he was told by his supervisors that the work schedule would not always conform to the posted break schedule and that he should apply the posted schedule to his [time records] regardless of when the breaks actually [were] taken. As such, [plaintiff] has established that any 'false' timekeeping was the result of a good faith misunderstanding as to his job duties and responsibilities." ~

On July 20, 2012, judgment was entered in favor of plaintiff. The board was ordered to determine the amount of unemployment compensation benefits due to plaintiff. Further, plaintiff was then to be paid the amount of unemployment compensation benefits the board determined to which he was entitled.

## VII.  DISCUSSION

### A.  Standards Of Review

Our Supreme Court has identified the applicable standard of review for trial courts and ourselves.  The trial court's duties are as follows:  "In reviewing a decision of the Board on a petition for writ of administrative mandamus, "'the superior court exercises its independent judgment on the evidentiary record of the administrative proceedings and inquires whether the findings of the administrative agency are supported by the weight of the evidence.'"  (*Sanchez v. Unemployment Ins. Appeals Bd.* (1984) 36 Cal.3d 575, 585 (*Sanchez*).)"  (*Paratransit, Inc. v. Unemployment Insurance Appeals Board* (2014) 59 Cal.4th 551, 562 (*Paratransit, Inc.*).)

Our Supreme Court has set forth our standard of review of the trial court's ruling in the following fashion:  "On review of that decision, an appellate court determines whether the independent 'findings and judgment of the [superior] court are supported by substantial, credible and competent evidence' in the administrative record.  ([*Sanchez*, *supra*, 36 Cal.3d at p. 585]; see *Amador*[ *v. Unemployment Ins. Appeals Bd.* (1984)] 35 Cal.3d [671, 679 [*Amador*])  '[A]ll conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences made to uphold the superior court's findings; moreover, when two or more inferences can be reasonably deduced from the facts, the appellate court may not substitute its deductions for those of the superior court.'  (*Lacy v. California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1134.)  However, the appellate court may disregard the superior court's conclusions when the probative facts are undisputed and clearly require different conclusions.  (*Sanchez,* at p. 585; *Amador,* at p. 679.)  "'Appellate review in such a case is based not upon the substantial evidence rule, but upon the independent judgment rule.  [Citations.]'"  (*Brotherhood of Teamsters & Auto Truck Drivers v. Unemployment Ins. Appeals Bd.* (1987) 190 Cal.App.3d 1515, 1525.)"  (*Paratransit, Inc.*, *supra*, 59 Cal.4th at p. 562.)

### B. Unemployment Compensation Benefits And Misconduct

An employee loses the right to unemployment compensation benefits when her or his employment is terminated for misconduct. (*Paratransit, Inc., supra,* 59 Cal.4th at p. 563; *Amador*, *supra*, 35 Cal.3d at p. 678.) Section 1256 states in part, "An individual is disqualified for unemployment compensation benefits if the director finds that he or she left his or her most recent work voluntarily without good cause or that he or she has been discharged for misconduct connected with his or her most recent work." The employment department director is authorized to adopt regulations to fill in the details of unemployment benefits statutes and to promote their spirit and purpose. (§ 305; *Cal. Emp. Co. v. Butte County etc. Assn.* (1944) 25 Cal.2d 624, 629; see *Cozad v. Board of Chiropractic Examiners* (1957) 153 Cal.App.2d 249, 255-256.) Title 22 of the California Code of Regulations, section 1256-30 subdivision (b), which parallels section 1256, identifies four general factors in determining whether misconduct has occurred: "Misconduct connected with his or her most recent work exists for an individual's discharge if all of the following elements are present: [¶] (1) The claimant owes a material duty to the employer under the contract of employment. [¶] (2) There is a substantial breach of that duty. [¶] (3) The breach is a willful or wanton disregard of that duty. [¶] (4) The breach disregards the employer's interests and injures or tends to injure the employer's interests."

Our Supreme Court has explained the purpose of unemployment insurance compensation: "The fundamental purpose of California's Unemployment Insurance Code is to reduce the hardship of unemployment by 'providing benefits for persons unemployed through no fault of their own.' (§ 100; see *Amador*, *supra*,] 35 Cal.3d at p. 678 [].) In light of this purpose, "'fault is the basic element to be considered . . .'" when 'interpreting and applying' the provisions of the code. (*Amador,* at p. 678.) At issue here is section 1256, which renders an individual ineligible for unemployment compensation benefits upon a finding that 'he or she has been discharged for *misconduct* connected with his or her most recent work.' (Italics added.) When an employee has been found

15

discharged for misconduct, the employer's reserve account may be relieved of benefit charges. (§§ 1030, 1032.)" (*Paratransit, Inc.*, *supra*, 59 Cal.4th at p 558, fns. omitted.)

Decisional authority has established the following general test for a discharged employee's right to unemployment compensation benefits: "'Misconduct' as used in the foregoing provision is limited to "'. . . conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer." (*Agnone v. Hansen* (1974) 41 Cal.App.3d 524, 528 citing *Maywood Glass Co. v. Stewart* (1959) 170 Cal.2d 719, 724.) However, decisional authority also states the following conduct does not support a denial of unemployment benefits: "Simply because an employer has and exercises a right to discharge an employee does not establish misconduct necessary to deny unemployment benefits. (Cal. Code Regs., tit. 22, § 1256-30, subd. (e); see also *Grace Drilling Co. v. Novotny* (Okla.App. 1991) 811 P.2d 907, 909.) Mere inefficiency, unsatisfactory conduct, inadvertencies or ordinary negligence or good faith errors in judgment or discretion do not constitute 'misconduct' within the meaning of the statute. (*Amador*[], *supra*, 35 Cal.3d at p. 678; see also *Maywood Glass Co. v. Stewart*[, *supra*,] 170 Cal.App.2d [at pp. 723-724].)" (*American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1994) 23 Cal.App.4th 51, 59.) In addition, a single act of disobedience resulting from a good faith error in judgment may be insufficient to disqualify a discharged employee from unemployment benefits. (*Paratransit, Inc.*, *supra*, 59 Cal.4th at p. 559; Cal. Code Regs., tit. 22, § 1256-30, example 13 [single act involving a profane interaction with an employer does not involve misconduct sufficient to permit denial of unemployment benefits].)

Section 1256 creates a rebuttable presumption that, absent evidence from the employer, an employee is not discharged for misconduct. Our Supreme Court explained: "Section 1256 creates a rebuttable presumption that, absent evidence from the employer,

16

the employee was not discharged for misconduct. . . . In *Amador*, we explained the respective burdens of the parties this way:  'The employer bears the overall burden of proving misconduct.  [Citations.]  However, once it is established that the employee has violated a reasonable order, the burden shifts to the employee to show good cause. [Citation.]"  (*Amador*, *supra*, 35 Cal.3d at p. 680, fn. 7.)"  *(Paratransit, Inc.*, *supra*, 59 Cal.4th at p. 561.)

The California Code of Regulations more specifically addresses different forms of misconduct.  As noted, California Code of Regulations, title 22, section 1256-30 provides a general overview of discharge for misconduct which in large part closely parallels section 1256.[2]  California Code of Regulations, title 22, section 1256-30, subdivision (a) directs the reader to other regulatory provisions concerning different types of alleged misconduct.  Title 22 of the California Code of Regulations section 1256-34 sets forth specific provisions relating to dishonesty, which is the relevant discharge ground in the present case.  California Code of Regulations, title 22, section 1256-34, subdivision (a) states in part:  '"Dishonesty' includes such acts and statements as lying, theft, making false entries on records, and other actions showing a lack of truthfulness and integrity. 'Dishonesty' includes both criminal and noncriminal dishonest acts and statements. Section 1256-30 of these regulations sets forth general principles also applicable under this section."  In a case where other employees have engaged in dishonesty without reprimand or warning, Title 22 of the California Code of Regulations, section 1256-34, subdivision (b), sets forth in part the applicable rule in the case of worker dishonesty: "An employee who has engaged in dishonest acts or statements connected with the most recent work and for that reason is discharged has been discharged for misconduct even though other employees engaged in similar past acts or conduct or the employee has previously successfully engaged in substantial dishonesty without reprimand or warning

---

[2]  Title 22 of the California Code of Regulations section 1256-30, subdivision (a) states in part: "Scope.  This section relates to general principles for discharge for misconduct connected with the most recent work.  Sections 1256-31 to 1256-43, inclusive, of these regulations, relate to specific reasons for discharge for misconduct."

17

or the employer has no specific rule forbidding dishonesty. Dishonesty does not exist if the employee's act or statements arise from a good-faith misunderstanding between the employer and employee where a reasonable person would not have interpreted the acts or statements as dishonest under the circumstances."

C.  Plaintiff Committed Misconduct Within The Meaning Of Section 1256 When, On Four Occasions, He Took Excessive Breaks And Falsely Documented Their Duration On The District's Time Records.

The district raises numerous contentions of error. However, we need only resolve a single contention posited by the district. It is undisputed plaintiff on four occasions took breaks which exceeded their maximum allowable or ration. And it is further undisputed he falsely recorded the amount of break time on his time card on these four occasions.

During the administrative hearing, plaintiff was asked by Klaren Bentley, the district's representative, whether he admitted he exceeded his allotted total break time on specified occasions. Plaintiff responded to Ms. Bentley: "I admit. . . . Yes, ma'am." The following then ensued: "Q . . . And you admit you did not properly document that on your timesheet, correct? [¶] A Yes, ma'am." Later, Ms. Bentley asked plaintiff about whether he was ever instructed to not document excessive breaks on his timesheets: "Ms. Bentley: Did anybody tell you that if you took more than your unallotted breaks you did not need to document that on your timesheet?" [¶] . . . [Plaintiff]: No. [¶] Ms. Bentley: [] . . . [D]id you ever notify anybody or attempt to notify anybody that you had exceeded the amount of break time that you were allotted on those dates in question? [¶] [Plaintiff]: [] No, I didn't." At the administrative hearing, plaintiff justified his failure to notify the district that he was taking excessive breaks because no other employees did either.

The undisputed evidence demonstrates that on four occasions plaintiff's breaks lasted beyond the allowable 50 minutes. And on those four occasions, plaintiff knowingly failed to accurately reflect the excessive breaks on his written time records.

18

The administrative law judge found plaintiff exceeded the break times permitted by the district and made false entries on the time records. Plaintiff's conduct constitutes dishonesty within the meaning of California Code of Regulations, title 22, section 1256-34, subdivision (a) which states in part, "'Dishonesty' includes such acts and statements as lying, theft, making false entries on records, and other actions showing a lack of truthfulness and integrity. . . ." Here, plaintiff on four occasions took excessive breaks. And then he, by his own admission and the documentary evidence, failed to correctly state on his written timesheets how long the excessive breaks lasted. Based upon the foregoing, plaintiff committed misconduct within the meaning of section 1256.

The fact that other employees took excessive breaks is legally irrelevant. California Code of Regulations, title 22, section 1256-34, subdivision (b) addresses the situation when other employees engage in dishonest acts. When an employee engages in dishonest acts or statements and is thereby discharge, it is not an excuse that other employees engaged in an equally culpable act. (*Ibid.*) This rule applies even though the employer has no specific rule forbidding dishonesty. (*Ibid.*)

There is no basis for a finding that a reasonable person would have thought plaintiff's conduct was not dishonest under the circumstances. As noted, one sentence in California Code of Regulations, title 22, section 1256-34, subdivision (b) mirrors the good faith misunderstanding language in section 1256, "Dishonesty does not exist if the employee's act or statements arise from a good-faith misunderstanding between the employer and employee where a reasonable person would not have interpreted the acts or statements as dishonest under the circumstances."

This rule, with its multiple uses of negatives, incorporates the following elements. For purposes of finding misconduct based upon dishonest actions, dishonesty does not exist under specified circumstances set forth in California Code of Regulations, title 22, section 1256-34, subdivision (b). For purposes of California Code of Regulations, title 22, section 1256-34, subdivision (b), the necessary circumstances must involve a dispute between the employer and the employee concerning whether conduct is dishonest. However, the dispute must arise from a *good-faith misunderstanding* between the

19

employer and the employee. The good-faith misunderstanding is viewed from a reasonable person's perspective; not from the employee or employer's standpoint. Once the good faith dispute concerning whether the conduct is dishonest is viewed in that context, there are generally two possible outcomes. The first potential outcome is that if a reasonable person would not have interpreted the employee's conduct as dishonest, then there has been no dishonesty. Under this first potential outcome, the employee is entitled to recover unemployment compensation benefits. By contrast, the second possible outcome arises if a reasonable person would have interpreted the employee's conduct as dishonest. If a reasonable person concludes the employee's conduct is dishonest, then there has been dishonesty for purposes of denying recovery of unemployment insurance benefits. Here, a reasonable person would not have interpreted plaintiff's actions in taking four excessively long breaks and repeatedly falsifying his time records as honest. There is no evidence that a good-faith misunderstanding existed or could exist concerning plaintiff's admitted taking of excessive breaks on four occasions and falsifying his time records. It bears emphasis that unlike other disputes that arise in the workplace, making false entries in a public document can be, depending on the circumstances, a crime. (Gov. Code, §§ 6200-6201; Pen. Code, § 115, subd. (a); see *People v. Garfield* (1985) 40 Cal.3d 192, 196.)

We need not resolve the question of whether misconduct was established by plaintiff's actions in violating the district's rules concerning the *location* of taking breaks. Plaintiff testified at the administrative hearing he was told he could take his breaks depending on other work responsibilities and safety concerns. However, those circumstances are different from the dishonesty involved in the excessive break duration and falsification of time record entries. During the administrative proceedings plaintiff testified he was told by "management" he could take breaks and eat lunch other than specified by the district policy. In this regard as to those actions, he was given the option of acting as he did and told to falsify time records. But in connection with excessive break times and falsifying time records, plaintiff never testified he was given permission to engage in that form of conduct. It is undisputed plaintiff, on four occasions, exceeded

20

his break times and falsified their duration on his time records one of the reasons for which he was discharged.  The probative facts in terms of excessive breaks and the ensuing false entries on district records are not in dispute.  (*Paratransit, Inc.*, *supra*, 59 Cal.4th at p. 562; *Sanchez*, *supra*, 36 Cal.3d at p.585.)  Thus, plaintiff has committed misconduct and is not entitled to unemployment compensation benefits.  (§ 1256; Cal. Code Regs., tit. 22, § 1256-34, subd. (b).)

## VIII. DISPOSITION

The order granting a writ of mandate is reversed.  Upon remittitur issuance, a new order is to be entered denying the mandate petition.  The real party in interest, the Los Angeles Unified School District, is awarded its cost incurred on appeal from plaintiff, Jim L. Irving.

**CERTIFIED FOR PUBLICATION**

TURNER, P. J.

We concur:

KRIEGLER, J.                                         MINK, J.[*]

---

[*] Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.