[Civ. No. 17295. Third Dist. Dec. 7, 1978.]

FRANK K. KERIN, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent.

COUNSEL

Frank K. Kerin, in pro. per., for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, John J. Klee, Jr., Assistant Attorney General, Thomas E. Warriner and James D. Claytor, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**REGAN, Acting P. J.**—Plaintiff appeals from a judgment of the superior court denying his petition for a peremptory writ of mandate in which he sought to compel the payment of certain sums of unemployment insurance benefits which had been denied to him by the defendant board.

Plaintiff contends the trial court (and the board) erred in interpreting Unemployment Insurance Code section 926, which defines wages. He also contends it was error to make use of a United States Supreme Court case (*Social Security Board* v. *Nierotko* (1946) 327 U.S. 358 [90 L.Ed. 718, 66 S.Ct. 637, 162 A.L.R. 1445]) involving the Social Security Act as partial authority for the decision in this case involving unemployment insurance.

The sole issue which the trial court (and the board) had to decide was a question of law, to wit, whether an award of back pay to an employee amounts to "wages" within the meaning of Unemployment Insurance Code section 926. It was held that such pay was wages.

Plaintiff had worked at the Hunter's Point Naval Shipyard from July 15, 1965, to March 17, 1974, on which date his employment was terminated. He then applied for a job at the United States Treasury Mint in San Francisco. Since he was not hired as soon or at as high a level as he believed he should have been, he filed an Equal Employment Opportunity (EEO) complaint with the United States Treasury Department. On October 15, 1975, he was notified by the Treasury Department that his complaint was valid and he had been rated too low and hired too late. He had been hired on October 5, 1975, at a certain machinist level, but should have been hired in August 1975 at a higher rating. The treasury officer in charge of EEO complaints offered plaintiff a two-choice option in order "to resolve your EEO complaint, through Administrative channels, . . ." The options were:

"(1) continuation of your current appointment as Machinist, WG-11, Announcement No. 88-75, at the U. S. Assay Office, San Francisco, for a period not to exceed October 5, 1976; OR

"(2) appointment to the position of Machinist, WG-11, Announcement No. 72-75, for a period not to exceed August 10, 1976, retroactive to August 11, 1975, the date you would have entered on duty had you been selected for that position . . . ."

Plaintiff accepted the second option. He thereafter received a check in the gross amount of $2,489.60 representing the sums he would have earned between August 11, 1975, and October 15, 1975, had he been properly rated and hired on August 11, 1975. The Department of Treasury designated these funds specifically as "back pay" for time plaintiff should have been on the payroll, and stated in writing there was no award "for damages."

On January 2, 1976, plaintiff was terminated at the mint. On January 5, 1976, he filed a claim with the State of California Employment Development Department for special unemployment assistance benefits (SUA) pursuant to title II of the Emergency Jobs and Unemployment Assistance Act of 1974. (Pub.L. No. 93-567 as amended; 88 Stat. 1845, 1850; 89 Stat. 240-242; 90 Stat. 2689-2691.) Plaintiff's "base year period" for computation of regular unemployment insurance benefits (UCFE) under Unemployment Insurance Code section 1275 was July 1, 1974, through June 30, 1975. In order to receive *regular* unemployment benefits an individual must have been paid minimum wages during his "base year" of $750. (Unemp. Ins. Code, §§ 1280, 1281.) Since plaintiff was unemployed during this base period he was ineligible for *regular* state unemployment benefits. However, he *was* eligible for SUA benefits under a provision of the Emergency Jobs and Unemployment Assistance Act of 1974. (88 Stat. 1850.) Accordingly, he was paid SUA benefits of $104 weekly through the week ending January 31, 1976.

By operation of Unemployment Insurance Code section 1275,[1] plaintiff's base-year period changed at the beginning of the week of February

---

[1]Unemployment Insurance Code section 1275 reads as follows in its entirety: "Unemployment compensation benefit award computations shall be based on wages paid in the base period. 'Base period' means: for benefit years beginning in November, December, or January, the four calendar quarters ended in the next preceding month of June; for benefit years beginning in February, March, or April, the four calendar quarters ended in the next preceding month of September; for benefit years beginning in May, June, or July, the four calendar quarters ended in the next preceding month of December; for benefit years beginning in August, September or October, the four calendar quarters ended with the next preceding month of March. Wages used in the determination of benefits payable to an individual during any benefit year shall not be used in determining such individual's benefits in any subsequent benefit year."

1, 1976. The base period became October 1, 1974, through September 30, 1975. The department began paying plaintiff the UCFE rate of $78 per week, rather than the SUA rate of $104 per week. The reason for the change was that in this new base-year period plaintiff had received back pay which constituted wages allocable to the period August 11, 1975, through October 15, 1975, effective the week of January 1, 1976, making him eligible for regular UCFE, according to the department, and thus ineligible for SUA.

■ Plaintiff appealed from this act of the department, claiming he had not received "wages" (the back pay) within the meaning of Unemployment Insurance Code section 926[2] (which defines wages) and was therefore eligible for continued SUA payments. The appeal went through the administrative and judicial channels, including a decision of an administrative law judge that the back pay constituted wages within the meaning of section 926, an affirmation by the Unemployment Insurance Appeals Board, and a judgment denying a writ of mandate by the superior court after hearing by the court. We shall affirm the judgment.

Plaintiff professes to be unable to perceive how the sum paid him as back pay could properly be considered as wages by any of the unemployment administrative personnel, the board or the trial court, since in point of fact he had not physically worked during the period of time for which the pay was allocated to him. The courts, on the other hand, have had little trouble with categorizing back pay, for various purposes, as wages.

The principal case is *Social Security Board* v. *Nierotko, supra* 327 U.S. 358. There the United States Supreme Court held that an award of back pay to an employee must be treated as "wages" for Social Security Act purposes even though the employee had not performed work for the back pay, since he had been wrongfully separated from his job. (327 U.S. at pp. 359, 364-365, 370 [90 L.Ed. at pp. 722, 724-725, 728].) Plaintiff takes the position that the *Nierotko* case must be distinguished from this case, and may not be used as authority, due to the fact it dealt with social security rather than unemployment insurance. He points to the different

---

[2]Unemployment Insurance Code section 926 reads, in whole, as follows: "Except as otherwise provided in this article 'wages' means all remuneration payable to an employee for personal services, whether by private agreement or consent or by force of statute, including commissions and bonuses, and the reasonable cash value of all remuneration payable to an employee in any medium other than cash."

purposes of social security and unemployment insurance. To us, plaintiff has described a distinction without a difference. The basic principles are the same. The rationale of *Nierotko* is that back pay is wages under circumstances essentially analogous to this case. We accept *Nierotko* as authority to sustain the holding of the lower court and the board.

Other cases, both federal and state, are useful precedents to illustrate the soundness of the decision in this case. As pointed out in *Equal Employment Op. Com'n.* v. *Detroit Edison Co.* (6th Cir. 1975) 515 F.2d 301, 308, under the provisions of the Civil Rights Act of 1964 "back pay" is considered a form of restitution, not an award of either compensatory or punitive damages. A number of federal cases have held for certain purposes, including taxation, that back pay or after-the-fact restitution of wages will be deemed a wage payment even though the person involved did not actually work during the time period involved. (See *Brodsky* v. *United States* (E.D.Pa. 1969) 295 F.Supp. 607; *Ricketts* v. *United States* (Ct. Cl. 1969) 405 F.2d 1293; *C.I.R.* v. *Robillard* (5th Cir. 1962) 308 F.2d 518; *Wardall* v. *United States* (Ct. Cl. 1953) 111 F.Supp. 885; *United Ind. Wrks. of Sea. I.U.* v. *Board of Tr. of Galveston Wh.* (5th Cir. 1968) 400 F.2d 320.)

Certain California cases also tend to support, by their rationale, the decision of the trial court and the board. It has been held that vacation payments amount to wages. (*Jones* v. *California Emp. Stab. Com.* (1953) 120 Cal.App.2d 770 [262 P.2d 91].) Severance or dismissal pay was held to constitute wages. (*Bradshaw* v. *California Emp. Stab. Com.* (1956) 46 Cal.2d 608 [297 P.2d 970].)[3]

The trial court (and the board) did not err in holding the award of back pay amounts to wages.

The judgment is affirmed.

Paras, J., and Evans, J., concurred.

---

[3]This judicial ruling was modified by later legislation. (Unemp. Ins. Code, § 1265; see also *Powell* v. *California Dept. of Employment* (1965) 63 Cal.2d 103 [45 Cal.Rptr. 136, 403 P.2d 392].)