[No. G020915. Fourth Dist., Div. Three. Sept. 30, 1997.]

DENIS CHARLES MOLNAR, Plaintiff and Respondent, v. UNEMPLOYMENT INSURANCE APPEALS BOARD et al., Defendants and Appellants.

## COUNSEL

Daniel E. Lungren, Attorney General, Charlton G. Holland, Assistant Attorney General, John H. Sanders and Robin T. Gertler, Deputy Attorneys General, for Defendants and Appellants.

Marie Elena Molnar for Plaintiff and Respondent.

## OPINION

**SONENSHINE, J.**—The California Unemployment Insurance Appeals Board, the California Employment Development Department (EDD), and Al Lee, EDD's director, appeal from a judgment granting Denis Charles Molnar's petition for an administrative writ of mandamus.[1] In this case of first

---

[1]Appellants will hereafter be referred to as the Board.

impression, we are asked to define work requirements pursuant to Unemployment Insurance Code section 1277,[2] subdivision (a) in the context of an involuntarily terminated employee's second claim for unemployment benefits.

## I

Xerox laid off Molnar in January 1994, offering him as part of a severance package a lump-sum payment or a salary continuance plan. Molnar elected the latter, which Xerox paid through the middle of August. He also received EDD unemployment benefits with an effective date of July 3, 1994.

Molnar filed a second unemployment claim in June 1995 which EDD denied. He appealed but the administrative law judge affirmed the ruling. His appeal to the Board met a similar fate. Finally, the trial court granted Molnar's petition for a writ of administrative mandamus. The Board appeals.

## II

Section 1277, provides in relevant part, "[I]f the base period of a new claim includes wages which were paid prior to the effective date of, and not used in the computation of the award for, a previous valid claim, the new claim shall only be valid if, during the 52-week period beginning with the effective date of the previous valid claim . . . . [¶] (a) [t]he individual earned or was paid sufficient wages . . . and *performed some work*." (Italics added.)

■ The Board limits its argument to whether Molnar performed some work during the requisite period.[3] Because the interpretation and applicability of a statute is a question of law (see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 242, p. 247), we determine de novo whether, as Molnar argues, his salary continuance payments satisfy the statutory mandate of having performed some work.

## III

Section 1277, subdivision (a) is clear and unambiguous in requiring a claimant to "perform[] some work." "Where the statue is clear, the 'plain

---

[2] All further statutory references are to the Unemployment Insurance Code.

[3] The Board explains, "Pursuant to . . . section 1265, severance pay or dismissal pay made to an individual plan or system established by an employer for the purpose of supplementing unemployment compensation benefits do not constitute 'wages.' [Citation.] However, in the instant action, the employer erroneously reported respondent's salary continuance as 'wages' to EDD. . . . Had the nature of these payments been accurately reported to EDD, respondent's claim would have also been denied on the basis that he did not earn sufficient 'wages' during the period of July 3, 1994 through July 1, 1995. [Citations.]"

meaning' rule applies." (*Sutco Construction Co.* v. *Modesto High School Dist.* (1989) 208 Cal.App.3d 1220, 1228 [256 Cal.Rptr. 671].) The plain meaning of "perform[] some work" is to furnish services. Contrary to Molnar's assertions, receipt of salary continuance benefits does not qualify.

The statute's legislative history is instructional. Enacted in 1953, section 1277 then conditioned second claim benefits upon only a satisfaction of a wage prerequisite. (See Historical Note, 65 West's Ann. Unemp. Ins. Code (1986 ed.) § 1277, p. 502.) To avoid the loss of several $100 millions in federal funding, the Legislature amended the statute in 1971 to conform to federal law (Assem. Bill No. 1503 approved by Governor, Oct. 18, 1971; Dept. of Water Resources, Analysis of Assem. Bill No. 1503 (1971 Reg. Sess.) Oct. 14, 1971) which prefaced eligibility upon a wage and a work requirement. (Dept. of Human Resources Development, Analysis of Assem. Bill No. 1503 (1971 Reg. Sess.) Oct. 5, 1971.) The Legislature therefore, in amending the section, intended an employee could "establish a second . . . claim after a single spell of unemployment[,]" (*ibid.*) only if he or she had performed some work during the requisite period.

The statute's latest legislative amendment further supports this conclusion. Prior to the addition of subdivision (b) in 1990,[4] some employees who became disabled after filing a claim were ineligible for either first or second claim benefits because they were unable to work or look for a job and failed to perform any work during their time of disability. The Legislature recognized "[p]ersons unemployed for the entire benefit year [could not] establish" a claim. (Sen. Com. on Industrial Relations, Analysis of Sen. Bill No. 1981 (1989-1990 Reg. Sess.) as amended Apr. 18, 1990.) Wishing to address the resulting inequity but mindful of the underlying public policy of "prevent[ing] people from drawing continually on [unemployment] funds" (Finance and Ins. Subcom. on Health and Workers' Ins., hearing and analysis of Sen. Bill No. 1981 (1989-1990 Reg. Sess.) as amended June 14, 1990), the Legislature amended the statute accordingly, establishing a very narrow exception to the work requirement.

Molnar argues he worked because he sought other employment pursuant to Xerox's suggestion. He relies on *Funk* v. *Sperry Corp.* (9th Cir. 1988) 842

---

[4]Section 1277, subdivision (b) provides, "The individual did not receive benefits under this part, and was disabled and was entitled to receive, wage loss benefits under Part 2 (commencing with Section 2601) of this division or under Division 4 (commencing with Section 3201) of the Labor Code, or under any workers' compensation law, employer's liability law, or disability insurance law of any other state or of the federal government. [¶] For the purpose of this section only, the term 'wages' includes any and all compensation for personal services performed as an employee for the purpose of meeting the eligibility requirements under subdivision (a) of Section 1281. This section is not applicable to the computation of an award for disability benefits."

F.2d 1129, but *Funk* does not stand for this proposition. There, the court determined whether an employer satisfied its *contractual obligation* to an employee by, inter alia, advising him his primary obligation during the last several months of his tenure was to seek other employment. The court held in favor of the employer. It *did not* determine anything more. To say *Funk* holds an employee is working while seeking work is to misconstrue the case.

Molnar's next contention is equally meritless. Citing *Oliver* v. *Unemployment Ins. Appeals Bd.* (1983) 143 Cal.App.3d 215 [191 Cal.Rptr. 694], he maintains *involuntarily terminated employees* are working even though they perform no work. Molnar misapprehends the authority upon which he relies. As the *Oliver* court explained, "[H]ad the employer repented its unlawful discharge and recalled [the employee], [nothing indicates] she would not have responded and resumed her [work]ing." (*Id.* at p. 218.)

Finally, Molnar relies on *Social Security Board* v. *Nierotko* (1946) 327 U.S. 358 [66 S.Ct. 637, 90 L.Ed. 718, 162 A.L.R. 1445] and *Kerin* v. *Unemployment Ins. Appeals Bd.* (1978) 87 Cal.App.3d 146 [150 Cal.Rptr. 751]. In *Nierotko*, the United States Supreme Court held an award of backpay to a wrongfully discharged employee qualified as wages for social security calculations, even though the employee had not worked. (*Social Security Board* v. *Nierotko, supra*, 327 U.S. at pp. 364-365 [66 S.Ct. at pp. 640-641].) "[W]e think it plain that an individual, who is an employee under the Labor Act and who receives 'back pay' for a period of time during which he was wrongfully separated from his job, is entitled to have that award of back pay treated as wages under the Social Security Act . . . ." (*Id.* at p. 364 [66 S.Ct. at p. 641].) Similarly in *Kerin*, the court held an employee who received backpay pursuant to an Equal Employment Opportunity award but who had not worked was nevertheless entitled to first time unemployment benefits. (*Kerin* v. *Unemployment Ins. Appeals Bd., supra*, 87 Cal.App.3d at p. 149.)

These cases are inapt. Both consider *compensation for past work periods* and not as we do *payments intended to mitigate against future loss of income.* Unlike backpay, which compensates an employee for that which would have been earned but for an employer's wrongful actions, salary continuation benefits are intended to minimize the loss of future *unearned* income.

Most analogous to our situation is *Lisec* v. *United Airlines, Inc.* (1992) 10 Cal.App.4th 1500 [11 Cal.Rptr.2d 689], where the court determined economic damages did not constitute wages for services performed within the social security context. Paramount to the court's conclusion was its recognition the respondents "sought compensation for legal injuries of an economic character occurring because of the wrongful *termination* of employment. None of the components of the damages award were to redress

deprivation of wages earned or due for services already performed or for a differential between appropriate pay and actual pay for services performed." (*Id.* at p. 1507, original italics.)

## IV

Molnar contends our conclusion undermines the Unemployment Insurance Code. We disagree. True, section 100 states its purpose is "the compulsory setting aside of funds . . . providing [unemployment] benefits for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum." However, the "interpretation [of the Unemployment Insurance Code *cannot*] exceed the limits of the statutory intent." (*California Emp. Com.* v. *Kovacevich* (1946) 27 Cal.2d 546, 550 [165 P.2d 917], italics added.) As we have explained, the Legislature intended second payments of unemployment benefits to be limited to very specific circumstances "to prevent people from drawing continually on [them]." (Finance and Ins. Subcom. on Health and Workers' Ins., *supra*, Sen. Bill No. 1981 (1989-1990 Reg. Sess.) as amended June 14, 1990.) Molnar's complaint is with the Legislature.

The judgment is reversed. On remand, the trial court is directed to vacate its order granting Molnar's petition for writ of administrative mandamus and issue a new order affirming the ruling of the Board. The Board shall recover its costs on appeal.

Wallin, Acting P. J., and Rylaarsdam, J., concurred.