Filed 4/30/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| STEVEN M. GOLDSTEIN, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD, <br><br> Defendant and Respondent. | H043742 <br> (Santa Clara County <br> Super. Ct. No. 1-15-CV-282571) |

Steven M. Goldstein appeals following the denial of his petition for writ of administrative mandate to compel the California Unemployment Insurance Appeals Board (the Board) to set aside its decision denying unemployment insurance benefits. We agree with Goldstein that the Board misapplied the governing law, thereby committing an abuse of discretion. However, because Goldstein fails to show that the error was prejudicial, we nevertheless affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Goldstein worked as an IT analyst until March 6, 2013. He filed a claim for unemployment insurance benefits (the First Claim) with the Employment Development Department (EDD) the following week.[1] The First Claim was granted, and he received

---

[1] Goldstein's First Claim was for a benefit year beginning March 10, 2013. "Benefit year" is statutorily defined as "the 52-week period beginning with the first day of the week with respect to which the individual first files a valid claim for benefits and thereafter the 52-week period beginning with the week in which such individual again files a valid claim after the termination of his or her last preceding benefit year." (Unemp. Ins. Code, § 1276.) Accordingly, Goldstein must have filed his First Claim, which does not appear in the Administrative Record, sometime during the week of March 10, 2013.

unemployment insurance benefits beginning the week ending on March 23, 2013 through the week ending on August 10, 2013.

Goldstein stopped receiving unemployment insurance benefits because, in August 2013, he successfully applied for disability benefits. He received disability benefits until he exhausted his maximum benefit amount in early September 2014.

Goldstein filed a second claim for unemployment insurance benefits (the Second Claim), which had an effective date of March 23, 2014. On February 3, 2015, the EDD determined that Goldstein's Second Claim was invalid under Unemployment Insurance Code section 1277[2] because, during the benefit year of his First Claim (i.e., March 10, 2013 through March 8, 2014), he neither was paid sufficient wages nor performed any work.

Goldstein filed an administrative appeal. Following a hearing, an Administrative Law Judge (ALJ) issued a written decision affirming the EDD's determination of invalidity. The ALJ reasoned that Goldstein's claim was invalid under section 1277 because he had not earned sufficient wages during the benefit year of his First Claim. The ALJ noted that disability benefits qualify as wages under section 1277.5, but concluded that Goldstein's prior "receipt of unemployment insurance benefits preclude[d] the application of" section 1277.5 to the Second Claim.

Goldstein appealed the ALJ's decision to the Board. In a May 1, 2015 decision, the Board adopted the ALJ's findings of fact and reasons for the decision as its own and affirmed.

On July 1, 2015, Goldstein filed a complaint against the Board in superior court and petitioned for a writ of mandate compelling the Board to reverse its denial of the Second Claim. Following a hearing, the superior court denied the petition in an order dated March 15, 2016, writing: "Petitioner's claim was not valid under Unemployment Insurance Code Section 1277 because he did receive unemployment insurance benefits

_____

[2] All further statutory references herein are to the Unemployment Insurance Code unless otherwise indicated.

2

during the prior valid claim period.  (Unemp. Ins. Code Sections 1277, 1277.1).

Unemployment Insurance Code Section 1277.5 does not apply to the facts underlying

Petitioner's claim."  The trial court did not address whether Goldstein performed work

during the relevant period.

Goldstein, proceeding in propria persona as he has throughout, timely appealed.

## II.  DISCUSSION

### A.  *Legal Principles*

#### 1.  *Standard of Review*

"Judicial review of benefit decisions of the . . . Board is governed by Code of Civil

Procedure section 1094.5."  (*Jacobs v. California Unemployment Ins. Appeals Bd.* (1972)

25 Cal.App.3d 1035, 1040.)  Code of Civil Procedure section 1094.5, subdivision (b)

limits the trial court's inquiry into the propriety of an administrative decision to three

grounds:  "[(1)] whether the respondent has proceeded without, or in excess of,

jurisdiction; [(2)] whether there was a fair trial; and [(3)] whether there was any

prejudicial abuse of discretion."  "Abuse of discretion is established if the respondent has

not proceeded in the manner required by law, the order or decision is not supported by

the findings, or the findings are not supported by the evidence."  (Code Civ. Proc.,

§ 1094.5, subd. (b).)  "A writ of administrative mandamus will not be issued unless the

court is persuaded that an abuse of discretion was prejudicial.  [Citation.]  In other words,

the reviewing court will deny the writ, despite abuse of discretion, if the agency's error

did not prejudicially affect the petitioner's substantial rights."  (1 Cal. Admin. Mandamus

(Cont.Ed.Bar 3d ed. 2018) Court's Scope of Review [Under Code. Civ. Proc. § 1094.5]

§ 6.47.)

In mandate proceedings, courts of appeal review legal questions, including

questions of statutory interpretation, de novo.  (*Santa Clara Valley Transportation

Authority v. Rea* (2006) 140 Cal.App.4th 1303, 1313; *Fireman's Fund Ins. Companies v.

Quackenbush* (1997) 52 Cal.App.4th 599, 604 [on appeal from grant of mandate petition,

applying de novo standard of review to "purely legal question" of statutory interpretation].)

### 2.     *Principles of Statutory Construction*

When interpreting a statute, "our primary task is to 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] The Legislature's language is the best indicator of its intent. [Citation.]" (*926 North Ardmore Ave*., *LLC v. County of Los Angeles* (2017) 3 Cal.5th 319, 328.) Where a "statute is unambiguous on its face . . . , courts may always test their construction of disputed statutory language against extrinsic aids bearing on the drafters' intent." (*Kulshrestha v. First Union Commercial Corp*. (2004) 33 Cal.4th 601, 613 fn. 7.) Such extrinsic aids include " ' "the legislative history of the statute and the wider historical circumstances of its enactment . . . ." [Citation.]' [Citation.]" (*State Comp. Ins. Fund v. Workers' Comp. Appeals Bd*. (2018) 20 Cal.App.5th 796, 805; *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1046 ["we [may] look to legislative history to confirm our plain-meaning construction of statutory language"].)

### 3.     *The Statutory Scheme*

#### a.     *Section 1276 and the Benefit Year*

Unemployment insurance "[b]enefits are paid during the benefit year" (*Monroe v. Oakland Unified School Dist*. (1981) 114 Cal.App.3d 804, 812), which is statutorily defined as "the 52-week period beginning with the first day of the week with respect to which the individual first files a valid claim for benefits . . . ." (§ 1276.) The benefit year for Goldstein's first claim was the 52-week period beginning on March 10, 2013 and ending on March 8, 2014.

#### b.     *Section 1275 and the Base Period*

The amount of unemployment benefits to which a claimant is entitled is "based on wages paid in the base period." (§ 1275, subd. (a).) Section 1275 defines the "base period" by reference to when a claimant's benefit year began. Generally, "for

4

benefit years beginning in January, February, or March," the "base period" is "the four calendar quarters ended in the next preceding month of September." (§ 1275, subd. (a).) The base period set forth in section 1275, subdivision (a) excludes earnings in the last three to six months of employment. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 29 (2009-2010 3rd Ex. Sess.) as amended Mar. 25, 2009 at p. 5.)

In 2009, the Legislature enacted section 1275, subdivision (b), which sets forth an alternative base period. (Stats. 2009-2010, 3rd Ex. Sess., ch. 23, § 2.) The section 1275, subdivision (b) alternative base period applies where a claimant "cannot establish a claim under [section 1275] subdivision (a) . . . ." (§ 1275, subd. (b).) In that circumstance, " 'base period' means: . . . for benefit years beginning in January, February, or March, the four calendar quarters ended in the next preceding month of December . . . ." (§ 1275, subd. (b).) The alternative base period set forth in section 1275, subdivision (b) includes "earnings as recent as 1 to 3 months" prior to the filing of a claim, thus enabling more workers, including seasonal workers, to establish eligibility for unemployment insurance benefits.[3] (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 29 (2009-2010 3rd Ex. Sess.) as amended Mar. 25, 2009 at p. 5.)

### c. *Section 1277 and the Lag Period*

The time period between the end of the base period and the beginning of the benefit year is commonly referred to as the " 'lag period.' " (Sen. Com. on Industrial Relations, Analysis of Sen. Bill No. 1981 (1989-1990 Reg. Sess.) as amended Apr. 18, 1990 at p. 1.) "Workers who are still unemployed at the end of their 52[-]week benefit

---

[3] Subdivision (b) of section 1275 was enacted to make California eligible to receive more than $800 million in federal funds under the American Recovery and Reinvestment Act of 2009 (ARRA). (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 29 (2009-2010 3rd Ex. Sess.) as amended Mar. 25, 2009 at p. 5.) The ARRA, "popularly known as the Stimulus Act, was passed as emergency legislation to rescue the American economy from . . . recession." (*Dorsey v. Jacobson Holman, PLLC* (D.D.C.2010) 707 F.Supp.2d 21, 23.)

year may file a new unemployment insurance claim based on wages paid in the lag period." (*Ibid*.) Such lag period claims are governed by section 1277, which applies where "the base period of a new claim includes wages which were paid prior to the effective date of, and not used in the computation of the award for, a previous valid claim." (§ 1277.)

Section 1277 provides that a lag period claim is "valid if, during the 52-week period beginning with the effective date of the previous valid claim, either of the following applies: [¶] (a) The individual earned or was paid sufficient wages to meet the eligibility requirements of subdivision (a) of Section 1281 and performed some work. [¶] (b) The individual did not receive benefits under this part, and was disabled and was entitled to receive, wage loss benefits under Part 2 (commencing with Section 2601) of this division [(i.e., disability benefits)] or under Division 4 (commencing with Section 3201) of the Labor Code [(i.e., workers' compensation benefits)], or under any workers' compensation law, employer's liability law, or disability insurance law of any other state or of the federal government." That is, a lag period claim is valid if, during the benefit year of the claimant's first claim, he or she (a) satisfied earnings and work requirements or (b) received no unemployment benefits due to disability or injury.

### d. *Section 1277.1*

Section 1277.1 was enacted at the same time that section 1275, subdivision (b) was added to create the alternative base period. (Stats. 2009, 3rd Ex. Sess., ch. 23, § 3.) It applies, "[n]otwithstanding Section 1277," to "a subsequent new claim" when the claimant's "previous valid claim was filed under subdivision (b) of Section 1275. . . ." (§ 1277.1, subd. (a).) Section 1277.1, subdivision (a) provides that such a "new claim shall only be valid if, during the 52-week period beginning with the effective date of the previous claim, either of the following applies: [¶] (1) The individual earned or was paid sufficient wages to meet eligibility requirements of subdivision (a) of Section 1281 and performed some work. [¶] (2) The individual did not receive benefits under this part and

6

was disabled and was entitled to receive wage loss benefits under Part 2 (commencing with Section 2601) or under Division 4 (commencing with Section 3200) of the Labor Code, under any workers' compensation law, under employer's liability law, or under any disability insurance law of any other state or the federal government." These validity requirements are identical to those set forth in section 1277.

> ### e. *Section 1277.5 and the Use of Disability Benefits as Wages*

Section 1277.5 provides, in relevant part, that "[i]n determining, under Sections 1277 and 1277.1, whether a new claim is valid, twice the amount that an individual was entitled to receive [in Disability Compensation]. . ., during [the benefit year of the claimant's first claim], shall be considered as wages earned or paid to the individual during that 52-week period for purposes of meeting the eligibility requirements of subdivision (a) of Section 1281."

## B. *The Parties' Positions*

Goldstein maintains that his Second Claim was valid under section 1277, subdivision (a) because, during the benefit year of his First Claim, he received sufficient disability benefits (which, according to section 1277.5, constitute wages) to satisfy the earnings requirement and he performed some work.

The Board responds that Goldstein's receipt of unemployment benefits during the benefit year of his First Claim rendered his Second Claim invalid. In the Board's view, a section 1277 claim is valid only if the claimant did not receive any unemployment benefits during the benefit year of his or her first claim. The Board also takes the position that "disability benefits . . . count toward the earned wages necessary to bring a valid claim *only if* the individual *did not* receive unemployment insurance benefits during the 52-week qualifying period" (i.e., the benefit year of the claimant's first claim). The Board does not address whether Goldstein satisfied the section 1277, subdivision (a) work requirement in its respondent's brief. The Board also cites section 1277.1 as invalidating Goldstein's second claim.

As discussed further below, our research turned up published guidance from the EDD—the agency charged with administering the State's unemployment insurance compensation program[4]—directly contradicting the Board's position that disability benefits are not considered wages if the claimant was paid unemployment insurance benefits on the prior claim. We requested supplemental briefing from the parties addressing both the propriety of this court's taking judicial notice of the published guidance and the substance of the EDD's position that disability insurance payments may be used to satisfy the section 1277, subdivision (a) earnings requirement where the claimant was paid benefits on a prior claim.

In its response to that request, the Board acknowledges that "Goldstein's disability insurance payments could potentially be used to satisfy the [section 1277, subdivision (a)] sufficient 'wages' requirement" and asserts a new ground for affirmance—Goldstein's inability to satisfy the section 1277, subdivision (a) work requirement. The Board's concession that Goldstein's disability benefits constitute wages for purposes of the earnings requirement is diametrically opposed to the position it took in its respondent's brief that "disability benefits . . . count toward the earned wages necessary to bring a valid claim *only if* the individual *did not* receive unemployment insurance benefits during" the benefit year of the claimant's first claim. Yet the Board fails to recognize any inconsistency in its positions, instead reaffirming the arguments set forth in its respondent's brief and claiming that the "EDD's interpretation of . . . section 1277 is identical to [the Board's] position throughout this case . . . ."

### C.  *Section 1277 Governs the Validity of the Second Claim*

The validity of a second claim for unemployment benefits is governed by either section 1277 or section 1277.1, depending on the base period of the first claim for unemployment benefits. Section 1277.1 applies where the first "claim was filed under

---

[4] § 301; *Skidgel v. California Unemployment Insurance Appeals Board* (2018) 24 Cal.App.5th 574, 584, fn. 10 (*Skidgel*).

8

subdivision (b) of Section 1275," meaning the alternative base period was used for purposes of calculating unemployment benefits. Otherwise, section 1277 applies.

We begin by considering which of these provisions governs the validity of the Second Claim. Goldstein assumes that section 1277 governs without any factual or legal analysis. The Board cites both section 1277 and section 1277.1 in its respondent's brief, treating them as interchangeable. They are not. In its supplemental brief, the Board says that section 1277 applies and asserts that the base period for Goldstein's First Claim was October 1, 2011 through September 30, 2012. But the record pages it cites for that assertion show only that the effective date of the First Claim was March 10, 2013, without indicating the base period.

In fact, the record appears to be silent as to the base period of Goldstein's First Claim. Given that the EDD determined that Goldstein's Second Claim was invalid under section 1277, the ALJ and the Board relied exclusively on section 1277, and the parties agree that section 1277 applies, we shall assume that the base period of Goldstein's First Claim was October 2011 through September 2012. In that case, the lag period (the time between the base period and the start of the benefit year of the First Claim) was October 2012 through February 2013. The base period of the Second Claim was either October 2012 through September 2013 (§ 1275, subd. (a)) or January 2013 through December 2013 (§ 1275, subd. (b)). Either way, the base period of the Second Claim included wages paid in January and February 2013, "which were paid prior to the [March 10, 2013] effective date of, and not used in the computation of the award for, [his] previous valid claim." (§ 1277.) Thus, based on our assumption regarding the base period of the First Claim, the Second Claim was a lag period claim governed by section 1277 and we analyze it as such. (The same analysis would apply under section 1277.1, as the provisions contain identical validity requirements.)

9

**D.** ***Receipt of Unemployment Benefits During the Prior Benefit Year Does Not Invalidate a Claim Under Section 1277, Subdivision (a)***

The Board claims that *any* section 1277 claim is invalid if the claimant received unemployment benefits during the benefit year of his or her first claim. We reject that reading of section 1277, which is contradicted by the plain statutory language, the provision's legislative history, and the wider historical circumstances of its enactment and amendment over time.

*1.     Statutory Language*

We begin with section 1277's preamble. It provides: "Notwithstanding Section 1281, if the base period of a new claim includes wages which were paid prior to the effective date of, and not used in the computation of the award for, a previous valid claim, the new claim shall only be valid if, during the 52-week period beginning with the effective date of the previous valid claim, either [subdivision (a) or subdivision (b)] applies: . . . ." (§ 1277.) The term "either" means "one or the other." (Oxford English Dict. (2018) <http://www.oed.com/view/Entry/60027?redirectedFrom=either#eid> [as of Apr. 30, 2019], archived at: https://perma.cc/2JVN-9F7G [defining "either" as "one or other of the two"]; The American Heritage Dict. (2018) <https://www.ahdictionary.com/word/search.html?q=either> [as of Apr. 30, 2019], archived at: https://perma.cc/EF2Q-ZA2Q [defining "either" as "Any one of two; one or the other"]; *Heritage Residential Care, Inc. v. Division of Labor Standards Enforcement* (2011) 192 Cal.App.4th 75, 83 [" 'When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word' "].) Accordingly, subdivisions (a) and (b) are mutually exclusive; a claim need not satisfy both to be valid.

Next, we turn to subdivision (a) of section 1277, which states, "The individual earned or was paid sufficient wages to meet the eligibility requirements of subdivision (a) of Section 1281 and performed some work." In conjunction with the preamble, section 1277, subdivision (a) provides that a claim is valid if the claimant satisfies an

earnings requirement and a work requirement. By its terms, it does not condition claim validity on the claimant's not having received unemployment insurance benefits during the benefit year of his or her first claim.

By contrast, subdivision (b) of section 1277 provides that a claim is valid if the claimant "did not receive [unemployment insurance] benefits . . . , and was disabled and was entitled to receive" disability of workers' compensation benefits. Section 1277, subdivision (b) demonstrates that when the Legislature intends to condition claim validity on the claimant's not having received unemployment insurance benefits during the prior benefit year, it does so expressly. That the Legislature chose not to include any such express condition in section 1277, subdivision (a) indicates that the Legislature intended that section 1277, subdivision (a) claims be valid where the earnings and work requirements are met, regardless of prior receipt of unemployment benefits. (See *In re Jennings* (2004) 34 Cal.4th 254, 273 [" 'It is a settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes' "].)

In sum, the plain language of section 1277 is unambiguous and compels the conclusion that a claimant can establish a valid claim under section 1277, subdivision (a) even if he or she received unemployment insurance benefits during the benefit year of the prior valid claim.

### 2.    *Statutory and Legislative History*[5]

The history of section 1277 confirms our construction of section 1277, subdivision (a).

---

[5] The term "statutory history" refers to "[t]he enacted lineage of a statute, including prior laws, amendments, codifications, and repeals." (Black's Law Dict. (10th ed. 2014), p. 1638.) It is not synonymous with the term "legislative history," which refers to "[t]he proceedings leading to the enactment of a statute, including hearings, committee reports, and floor debates." (*Id*. at p. 1039.)

When it was first enacted in 1953, section 1277 "conditioned second claim benefits upon only a satisfaction of a wage prerequisite." (*Molnar v. Unemployment Ins. Appeals Bd.* (1997) 57 Cal.App.4th 1448, 1451 (*Molnar*).) That is, in 1953, a lag period claim was valid if the claimant earned a certain amount of wages during the benefit year of the first claim. (Stats. 1953, ch. 308, § 1277, p. 1504.)[6]

Section 1277 has since been amended a number of times, including in 1971. (Stats. 1971, ch. 1107, § 61, p. 2117, eff. Oct. 18, 1971, operative Jan. 1, 1972.) At that time, a requirement that the claimant "had some work" during the benefit year of the first claim was added to conform with federal law, namely Public Law No. 91-373 (1970). (Stats. 1971, ch. 1107, § 61, p. 2117; Finance, Analysis of Assem. Bill No. 1503 (1971 Reg. Sess.) as amended June 10, 1971; *Molnar*, *supra*, 57 Cal.App.4th at p. 1451 "[To avoid the loss of several $100 millions in federal funding, the Legislature amended the statute in 1971 to conform to federal law [citations] which prefaced eligibility upon a wage and a work requirement"].) Among other things, Public Law No. 91-373 added section 3304(a)(7) to the Federal Unemployment Tax Act. (Pub.L. No. 91-373, Title I, § 121(a); 84 Stat. 695 (1970).) That provision mandates that states require "*an individual who has received [unemployment] compensation during his benefit year . . .* to have had work since the beginning of such year in order to qualify for [unemployment] compensation in his next benefit year." (26 U.S.C. § 3304(a)(7), italics added; 26 U.S.C. § 3306(h) [defining "compensation" as "cash benefits payable to individuals with respect to their unemployment"].)

---

[6] As it was enacted in 1953, section 1277 read in full: "Wages paid prior to the filing of a valid claim and not used in the computation of the award may be used for the purpose of computing the amount of any other award only if within the 12-month period following the date of the filing of the valid claim the individual was paid sufficient wages to meet the eligibility requirements of Section 1281. This section is not applicable to the computation of an award for disability benefits but the establishment of a valid claim for disability benefits shall not constitute a valid claim for unemployment compensation benefits unless the claimant has sufficient wages to entitle the claimant to an award under this section." (Stats. 1953, ch. 308, § 1277, p. 1504.)

If, prior to the 1971 amendment, a section 1277 claim was invalid if the claimant had received unemployment benefits during the prior benefit year, then no amendment would have been required to bring it into compliance with 26 U.S.C. § 3304(a)(7). The State Legislature's conclusion that amendment was necessary means that receipt of unemployment benefits during the prior benefit year did not render a section 1277 claim invalid prior to the 1971 amendment.

Nor did the 1971 amendment prevent claimants who had received unemployment benefits during the prior benefit year from establishing a valid section 1277 claim. Instead, the Legislature opted to bring section 1277 into compliance with federal law by adding a work requirement. That approach indicates that the Legislature's intent was to allow an individual to receive unemployment insurance benefits two years in a row, so long as he or she met the existing earnings requirement and the newly enacted work requirement during the first benefit year.

The Legislature amended section 1277 most recently in 1990, at which time current subdivision (b) was added. (Stats. 1990, ch. 787, § 1.) Section 1277, subdivision (b) sets forth an exception to the earnings and work requirements for a narrow group of claimants—those who filed a valid unemployment insurance claim, but received no unemployment insurance benefits because they became injured or disabled and were unable to work during the entire benefit year. (Legis. Analyst, Analysis of Sen. Bill No. 1981 (1989-1990 Reg. Sess.) as amended Apr. 18, 1990, May 10, 1990.)

Legislative analyses prepared during the legislative process indicate that the Legislature's intent in enacting section 1277, subdivision (b) was to "remove[ ] a rarely exposed flaw in the law: individuals who have filed an unemployment insurance claim, but do not receive benefits because they are unable to work during the entire 52 week period of the claim, cannot receive [unemployment insurance] benefits on a new claim when they recover and are able to work, solely because they filed the first [unemployment insurance] claim. If they had not filed the expired [unemployment

13

insurance] claim, they would be eligible based on qualifying wages remaining in the base period." (Sen. Com. on Industrial Relations, Analysis of Sen. Bill No. 1981 (1989-1990 Reg. Sess.) as amended Apr. 18, 1990; see also Assem. Finance and Insurance Com., Republican Analysis of Sen. Bill No. 1981 (1989-1990 Reg. Sess.) as amended June 14, 1990 [describing the amendment as "[f]ix[ing]a small quirk in the law"].) Legislative analyses also noted that, despite its lack of a work requirement, subdivision (b) would not run afoul of the federal requirement "that 'an individual who has received compensation during his benefit year is required to have had work[] since the beginning of such year in order to qualify for compensation in his next benefit year,' " because subdivision (b) called for "paying benefits on a subsequent claim when no benefits were paid on the prior claim . . . ." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1981 (1989-1990 Reg. Sess.) as amended Apr. 18, 1990; Sen. Com. on Industrial Relations, Analysis of Sen. Bill No. 1981 (1989-1990 Reg. Sess.) as amended Apr. 18, 1990.)

The foregoing legislative history demonstrates that the Legislature did not intend section 1277, subdivision (b) to prevent all claimants who received unemployment benefits during the benefit year of a prior valid claim from establishing a valid subsequent claim under section 1277. Instead, the Legislature plainly intended to exempt from the earnings and work requirements those claimants who received no unemployment benefits on their prior valid claim because they were disabled for the entire benefit year. The enactment of section 1277, subdivision (b) had no impact on claimants who did receive unemployment benefits during the benefit year of a prior valid claim; they remain eligible for the additional unemployment benefits so long as they satisfy the section 1277, subdivision (a) earnings and work requirements.

In sum, statutory language and statutory and legislative history convince us that receipt of unemployment benefits in the prior benefit year renders a claim invalid under section 1277, subdivision (b) but not under section 1277, subdivision (a).

14

### E. Receipt of Unemployment Benefits During the Prior Benefit Year Does Not Preclude the Application of Section 1277.5

The parties dispute whether section 1277.5 applies where the claimant received unemployment insurance benefits during the benefit year of the prior valid claim. Goldstein argues that the receipt of unemployment benefits does not impact the applicability of section 1277.5. The Board contends that "disability benefits . . . count toward the earned wages necessary to bring a valid claim *only if* the individual *did not* receive unemployment insurance benefits during the 52-week qualifying period."[7] For that position, the Board merely cites sections 1277, subdivision (b) and 1277.1, subdivision (a)(2) without any legal analysis. The Board is mistaken.

#### 1. Statutory Language

Section 1277.5 states, in relevant part: "In determining, under Sections 1277 and 1277.1, whether a new claim is valid, twice the amount that an individual was entitled to receive under Part 2 (commencing with Section 2601) of this division [(i.e., in disability benefits)] or under Division 4 (commencing with Section 3200) of the Labor Code [(i.e., in workers' compensation benefits)], or under any workers' compensation law, employer's liability law, or disability insurance law of any other state or of the federal government, during the 52-week period beginning with the effective date of the previous valid claim, shall be considered as wages earned or paid to the individual during that 52-week period for purposes of meeting the eligibility requirements of subdivision (a) of Section 1281."

Section 1277.5 contains no language limiting its application to circumstances in which the claimant did not receive unemployment insurance benefits during the benefit year of the prior valid claim. By its terms, it applies, *without limitation*, to *any* determination as to whether a new claim is valid under section 1277. The language of

---

[7] We treat this as the Board's position despite its concession in its supplemental brief that "Goldstein's disability insurance payments could potentially be used to satisfy the sufficient 'wages' requirement . . ." because the Board argues the two positions are compatible.

section 1277.5 is unambiguous and squarely refutes the Board's argument that disability benefits are not treated as wages for purposes of section 1277, subdivision (a)'s earnings requirement if the claimant received unemployment benefits during the prior benefit year.

The Board's reliance on sections 1277, subdivision (b) and 1277.1, subdivision (a)(2) for its position is misplaced. As the Board effectively concedes in its supplemental brief, section 1277.1 has no application here. And section 1277, subdivision (b) exempts a narrow subset of claimants—those who received no unemployment benefits on their prior valid claim because they were disabled for the entire benefit year—from the earnings and work requirements. It does not limit the applicability of section 1277.5 to circumstances in which the claimant did not receive unemployment benefits during the prior benefit year.

### 2. *Agency Interpretation*

Our construction of section 1277.5, under which disability benefits constitute wages for purposes of section 1277 regardless of whether the claimant received unemployment benefits during the prior benefit year, is consistent with the EDD's own statutory interpretation. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 ["An agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts . . . ."]; *Skidgel*, *supra*, 24 Cal.App.5th at p. 584, fn. 10 [the EDD is the state agency charged with administering unemployment insurance compensation program].) The EDD's interpretation of the Unemployment Insurance Code appears in its "Benefit Determination Guide," a publication the department uses in making eligibility determinations and has made publicly available on-line.[8] (<https://www.edd.ca.gov/UIBDG/> [as of Apr. 29, 2019], archived at:

---

[8] On our own motion, we take judicial notice of section MI-15(D) of the EDD's Benefit Determination Guide, which is entitled "The 'Lag Period' " and addresses section 1277. (<https://www.edd.ca.gov/uibdg/Miscellaneous_MI_15.htm# TheLagPeriod> [as of Apr. 29, 2019], archived at: <https://perma.cc/FC2Y-3MTD>). (Evid. Code, §§ 452, subd. (c) & 459, subd. (a).) Pursuant to Evidence Code

<https://perma.cc/BC6F-973Z>.)  The Benefit Determination Guide provides that disability insurance payments "may be used to satisfy the requirements of Section 1277 under either of the following conditions:  [¶]  [(1)] If the claimant was not paid any benefits on the prior claim, and was disabled and entitled to receive either [Disability Insurance or Workers' Compensation] to compensate for wage loss, the claimant may use the amount of [Disability Insurance or Workers' Compensation] paid to satisfy the earnings requirement; or [¶] [(2)] *If the claimant was paid benefits on the prior claim* and has satisfied the 'some work' requirement, *the claimant may use twice the dollar amount of the* [*Disability Insurance or Workers' Compensation*] *payments to meet the earnings requirement*."[9]  (*Ibid*., italics added.)

---

sections 459 and 455, we requested supplemental briefing from the parties as to the propriety of taking judicial notice of the matter.  Neither party expressed opposition.

[9] In its supplemental brief, the Board asserts that the EDD's statutory interpretation, as set forth in the Benefit Determination Guide, "is identical to [the Board's] position throughout this case, as well as the holdings of the Administrative Law Judge, and the superior court."  That assertion is false.  Again, the EDD interprets section 1277.5 as permitting a claimant who "was paid benefits on the prior [unemployment insurance] claim and has satisfied the 'some work' requirement . . . [to] use twice the dollar amount of [disability insurance] payments to meet the [section 1277, subdivision (a)] earnings requirement."  In its respondent's brief, the Board asserted that "disability benefits . . . count toward the [earnings requirement] *only if* the individual *did not* receive unemployment insurance benefits during the 52- week qualifying period."  That position is irreconcilable with the EDD's interpretation.  Likewise, the ALJ's conclusion that Goldstein's "receipt of unemployment insurance benefits precludes the application" of section 1277.5 and the superior court's view that "Section 1277.5 does not apply to the facts" here are diametrically opposed to the EDD's construction.

Tellingly, the Board asserts a new ground for affirmance in its supplemental brief—Goldstein's failure to satisfy the work requirement.  Plainly, the Board recognizes that the EDD's interpretation contradicts its prior position and we are disappointed in its failure to forthrightly acknowledge as much.  The Board's baseless assertion to the contrary is one of many shortcomings in its briefs.  Another is its discussion of the relevant law in its respondent's brief, which consists of three cut-and-pasted sections of the Unemployment Code—sections 1277, 1277.1, and 1277.5—without any legal analysis as to whether and how each applies here.  As discussed above, the Board goes on to ascribe meaning to those provisions that is inconsistent with the statutory language and unsupported by any explanation or reasoning.  These deficiencies have significantly

17

### F.    *Goldstein Fails to Show Prejudicial Error*

The Board denied Goldstein's Second Claim for failure to satisfy the section 1277, subdivision (a) earnings requirement.  For the reasons set forth below, that was error, but Goldstein fails to show that the error was prejudicial.

The earnings requirement is satisfied where the claimant "earned or was paid sufficient wages to meet the eligibility requirements of subdivision (a) of Section 1281 . . . ."  (§ 1277, subd. (a).)  One of the ways a claimant can satisfy the section 1281, subdivision (a) eligibility requirement is by showing that he or she was paid at least $1,300 in wages during his or her highest paid quarter in the base period.  (§ 1281, subd. (a)(1).)

The benefit year of Goldstein's First Claim, and thus the relevant period here, was March 10, 2013 to March 8, 2014.  It is undisputed that, during that period, Goldstein received disability benefits.  The record shows that the third quarter of 2013 was the quarter in which he received the most disability benefits—$13,001.42 in total.  That sum is more than enough to satisfy section 1281, subdivision (a), even without being doubled under section 1277.5.  Thus, Goldstein satisfied the earnings requirement and the Board erred in ruling otherwise.

The Board's error is prejudicial, and thus reversible, only if it affected the outcome of Goldstein's appeal.  (See Code Civ. Proc., § 1094.5, subd. (b) [requiring a "prejudicial abuse of discretion"]; *Quintanar v. County of Riverside* (2014) 230 Cal.App.4th 1226, 1228, 1236 [reversing judgment granting writ of administrative mandate where the hearing officer's use of the wrong standard of review was an abuse of discretion but was not prejudicial because use of the correct standard "would not have changed the outcome"].)  It did not.

A claim is valid under section 1277, subdivision (a) only if both the earnings and work requirements are satisfied.  The EDD denied the Second Claim for failure to satisfy

---

hampered our review of this matter.  We expect more from attorneys who litigate before us, particularly those representing government agencies.

either of these requirements. The Board's error as to the earnings requirement affected the outcome of Goldstein's appeal only if he also established that the EDD erred in concluding he did not satisfy the work requirement. But the record indicates that Goldstein did not challenge the EDD's work requirement finding in his appeals to the ALJ and the Board. Nor did he raise the issue in his operative amended petition for writ of mandate.

And even assuming Goldstein raised the issue during the agency proceedings and below, he points us to no record evidence establishing that he satisfied the work requirement. Title 22 of the California Code of Regulations, section 1277-2, subdivision (a) defines "work" for purposes of section 1277 as "services performed by a person for remuneration . . . [,] includ[ing] services performed for income or earnings in self-employment . . . ."[10] "Remuneration" means "pay" or "payment." (See Oxford English Dict. (2018) <http://www.oed.com/view/Entry/162337?redirectedFrom= remuneration# eid> [as of Apr. 29, 2019], archived at: https://perma.cc/4SE3-M76Q [defining remuneration as "money paid for work or a service; payment, pay"].) The record contains no evidence that Goldstein performed services for pay between March 10, 2013 and March 8, 2014.[11] In his opening brief, Goldstein asserts that he engaged in

---

[10] "The employment department director is authorized to adopt regulations to fill in the details of unemployment benefits statutes and to promote their spirit and purpose." (*Irving v. California Unemployment Ins. Appeals Bd.* (2014) 229 Cal.App.4th 946, 959; § 305.)

[11] The Board says in its supplemental brief that "it is undisputed that [Goldstein] did not perform any work after the effective date of his first claim which was March 10, 2013." For that assertion, it cites Goldstein's acknowledgement at the ALJ hearing that he had not earned any "wages as an employee since" March 6, 2013. But "work" is not limited to "services performed for . . . earnings . . . as an employee"; it also includes "services performed for income or earnings in self-employment . . . or as an independent contractor for a principal, . . . and services which an employee is ready, willing and able to perform but is involuntarily prevented from performing by the actions of his or her employer." (Cal. Code Regs., tit. 22, § 1277-2.) Accordingly, Goldstein's concession that he did not earn wages as an employee did not establish that he did not satisfy the work requirement.

"self-employment activities" during that time. Specifically, he claims—without citation to the record—that he "practic[ed] information security practices" as required to remain certified as a Certified Information Systems Security Professional by the International Information Systems Security Certification Consortium. That bald assertion is insufficient to warrant our consideration. (See *Mueller v. County of Los Angeles* (2009) 176 Cal.App.4th 809, 816, fn. 5 ["The claimed existence of facts that are not supported by citations to pages in the appellate record, or not appropriately supported by citations, cannot be considered by this court"].) Moreover, Goldstein does not contend, let alone show, that he was paid for any efforts he undertook to maintain his certification. And while maintaining the certification might enable him to obtain paid employment in the future, that does not render it a service performed for pay, which the statute requires to satisfy the work requirement.

On reply, Goldstein raises a new theory as to how he satisfied the "performed some work" requirement. Invoking section 1275, he contends that the relevant 52-week period is October 2012 to September 2013, not March 10, 2013 to March 8, 2014. (It is undisputed that Goldstein was employed for a portion of this newly proposed 52-week period—October 2012 to March 2013.) Goldstein's new argument fails for two reasons. First, he improperly raises it for the first time on reply. "Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant." (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.) Accordingly, "[p]oints raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3.) Because Goldstein has not shown good cause for raising the issue belatedly, we will not consider it. Second, the argument is meritless. As discussed above, section 1275 defines the base period, which is relevant to the computation of unemployment benefits. But for purposes of determining the validity of Goldstein's claim under section 1277, the relevant time period is "the 52-week

20

period beginning with the effective date of the previous valid claim . . . ." (§ 1277.) Here, that 52-week period ran from March 10, 2013 to March 8, 2014. As discussed above, there is no evidence Goldstein performed services for pay during that time.

Because Goldstein shows neither that he challenged the EDD's work requirement finding nor that any such challenge would have been meritorious, he fails to show that the Board's error as to the earnings requirement was prejudicial. Accordingly, the trial court did not err in denying his petition for writ of mandamus. (Code Civ. Proc., § 1094.5, subd. (b) [requiring a "prejudicial abuse of discretion"].)

### G. Goldstein's Complaints Regarding the Superior Court's Record-Keeping Practices

Goldstein spends a significant portion of his opening brief complaining about the superior court's record-keeping practices. But he does not contend that those alleged inadequacies prejudiced his case in any way. Nor does he raise any claim of error based on his complaints. Accordingly, we decline to address his grievances. (*In re S.C.* (2006) 138 Cal.App.4th 396, 409 [declining to address appellant's complaints regarding respondent's discovery responses where appellant merely was "vent[ing]" and raised no claim of error].)

## III. DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

                                                 _____

                                                 ELIA, J.

WE CONCUR:


_____

GREENWOOD, P. J.


_____

GROVER, J.


*Goldstein v. California Unemployment Insurance Appeals Board*
H043742

Trial Court:                                    Santa Clara County Superior Court
                                                Superior Court No.:  1-15-CV-282571


Trial Judge:                                    Honorable William J. Elfving


Counsel for Plaintiff and Appellant:            Pro Per
STEVEN M. GOLDSTEIN,


Counsel for Defendants and Respondents:         Xavier Becerra
CALIFORNIA UNEMPLOYMENT                          Attorney General
INSURANCE APPEALS BOARD,                         Julie Weng-Gutierrez
                                                Assistant Attorney General
                                                Susan M. Carson
                                                Deputy Attorney General
                                                Jennifer Celeste Addams
                                                Deputy Attorney General