Filed 2/14/20

## CERTIFIED FOR PUBLICATION

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JUNAID LATEEF,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CITY OF MADERA, et al.,<br><br>    Defendants and Respondents. | F076227<br><br>(Super. Ct. No. MCV072672)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Madera County.  Michael J. Jurkovich, Judge.

Solomon, Saltsman & Jamieson, Ryan M. Kroll for Plaintiff and Appellant.

Law Offices of Gregory L. Myers and Gregory L. Myers for Defendants and Respondents.

-ooOoo-

Junaid Lateef appeals from a judgment in favor of the City of Madera (city) and the Madera City Council (city council) (collectively respondents), which denied his petition for administrative mandamus and requests for declaratory and injunctive relief. At issue is the meaning of Madera Municipal Code section 10-3.1310(E),[1] which sets forth the minimum number of council votes required to overturn the Madera Planning

---

[1] All unlabeled statutory references are to the Madera Municipal Code.

Commission's (commission) denial of an application for a conditional use permit: "A five-sevenths vote of the whole of the Council shall be required to grant, in whole or in part, any appealed application denied by the Commission."

Lateef appealed the denial of his application to the seven-member city council, which voted four-to-one to grant his appeal; however, one councilmember recused himself and another council seat was vacant. The city council denied Lateef's appeal, ruling that he needed five votes (five-sevenths times the total membership of the council) to prevail.

Lateef contends the city council was required to grant his appeal because the ordinance requires a five-sevenths vote of those councilmembers present and voting, and he received five-sevenths of the five votes that were cast, namely four votes. He also contends he was denied a fair trial because the recused councilmember and vacant seat were included as councilmembers when determining the number of votes needed to grant his appeal. Finding no merit to Lateef's contentions, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Lateef submitted an application to the commission seeking approval to operate a neighborhood convenience store and to obtain conditional use permits to sell tobacco products, beer and wine. On December 8, 2015, Charles Rigby, who was a sitting councilmember and the city's mayor pro tem, sent an email to the commission's members urging them to vote against the application. Following a hearing held later that day, the commission denied the application.

Lateef appealed the commission's denial to the city council, as provided in section 10-3.1309.[2] According to section 10-3.1310, which sets forth the city council's action on such appeals, once an appeal is submitted, the city council sets a date and time

_____

[2] Section 10-3.1309 provides for a written appeal to the city council of any commission action taken in connection with an application for a use permit.

for a public hearing, and is required to render its decision within 60 days of the filing of the appeal. (§ 10-3.1310(A) & (C).) If the city council grants an appeal from the commission's denial, it must make written factual findings setting forth where the commission's findings were erroneous. (§ 10-3.1310(D).)

At the time Lateef submitted his appeal, former subsection 10-3.1310(E) provided: "A four-fifths vote of the whole of the Council shall be required to grant, in whole or in part, any appealed application denied by the Commission." When section 10-3.1310 was adopted in 1961, the city council was comprised of five members. Because the number of councilmembers increased to seven in 2012, the city decided to amend the four-fifths majority vote required to overturn a commission decision to reflect that change. To give the city time to amend the section, Lateef's attorney agreed to continue the hearing on the appeal, which was set for January 20, 2016, and waive any time deadlines by which the city council must render a decision. At a January 6, 2016 city council meeting, the city council postponed the hearing to April 6, 2016.

Prior to the appeal hearing, the city council adopted a resolution amending subsection 10-3.1310(E), which now reads: "A five-sevenths vote of the whole of the Council shall be required to grant, in whole or in part, any appealed application denied by the Commission." In a report to the city council recommending this change, city staff explained the decision to recommend a five-sevenths vote in place of the four-fifths vote requirement: "The 1961 ordinance requires an 80% (4/5ths) vote to grant an appeal of a Planning Commission decision. In assessing a corresponding percentage of a seven-member board, a 5/7ths vote in favor equates to a 71% vote required to grant the appeal. A 6/7ths vote equates to an 86% favorable vote necessary to grant an appeal. [¶] It is recommended that any amendment not create a more egregious appeal standard. Thus, although the 86% (6/7) standard more closely aligns with the current 80% appeal standard, the 71% (5/7) standard is recommended so as to more closely align with the purpose and intent of the ordinance which is not necessarily to restrict Council

3.

reevaluation of a Planning Commission action, but instead to allow for fair reevaluation of Commission decisions when appealed to the City Council by an interested party."

The hearing on Lateef's appeal began on April 6, 2016 and was continued to May 4, 2016. At both hearings, of the seven city council seats, one was vacant and Rigby, though present, recused himself due to his prior communication with the commission, leaving only five members to vote.

At the May 4, 2016 hearing, after all interested parties were heard, the city council voted four to one in favor of granting Lateef's appeal and reversing the commission's decision to deny his application. After the roll call was taken, the city clerk announced: "Motion passes 4 to 1." The city attorney then stated, "actually it needed five-sevenths to pass. That's on the appeal." The city clerk declared, "[c]orrection for the record, motion fails." After the mayor repeated, "[m]otion fails," the city clerk added, "[b]ased on the requirements in the Municipal Code."

*This Lawsuit*

Lateef subsequently filed a verified petition for writ of mandate, and complaint for declaratory and injunctive relief, in superior court against the city and the city council. Lateef sought a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5 to set aside the city council's denial of his appeal and instead enter an order granting it, based on allegations the city abused its discretion, failed to proceed in a manner required by law, denied him a fair hearing, and exceeded its jurisdiction "by ignoring the 71% of quorum standard imposed by MMC § 10-3.1310, and instead requiring that 100% of quorum vote in favor of granting Mr. Lateef's appeal and his Application …." Lateef alleged section 10-3.1310 was "too vague to be enforceable" and the city council's denial was not supported by the findings because 80 percent of the quorum voted to grant his appeal.

In his declaratory relief claim, Lateef alleged an actual controversy existed between the parties regarding whether subsection 10-3.1310(E) requires 71 percent of the

4.

quorum of the city council or 71 percent of all members of the city council. Lateef requested a determination that subsection 10-3.1310(E) requires five-sevenths of the quorum of the city council to vote in favor of an appeal in order to grant any appeal from an application the commission denied. Finally, Lateef sought an injunction requiring respondents to interpret subsection 10-3.1310(E) to require a favorable vote by 71 percent of the quorum of the city council.

The parties stipulated to the trial court deciding all issues presented in the petition for administrative mandamus and the causes of action alleged in the complaint on the stipulated administrative record and judicially noticed documents. After receiving briefing by the parties, the trial court held two days of hearings and received supplemental briefing. The trial court issued a tentative statement of decision denying all of Lateef's requests, which the trial court subsequently adopted as its statement of decision after neither party submitted objections.

In its detailed statement of decision, the trial court rejected Lateef's interpretation of subsection 10-3.1310(E), namely that the minimum votes to prevail on appeal is calculated based on the voting quorum and not all of the city council's members. Instead, the trial court determined the term "whole of the Council" means all of the members of the council, therefore five affirmative votes were required for Lateef to prevail on his appeal.

On Lateef's administrative mandamus claim, the trial court found, as relevant here: (1) the city did not proceed without, or in excess of, jurisdiction, and Lateef received a fair trial, because five councilmembers were present and voting, and if Lateef wanted to increased his chances of prevailing, he could have requested a continuance until the vacant seat was filled; (2) there was no prejudicial abuse of discretion, since five affirmative votes were required to prevail, five councilmembers voted at the appeal hearing, and as only four voted in his favor, Lateef lost his appeal; and (3) section 10-3.1310(E) is not too vague to be enforceable.

As for Lateef's declaratory and injunctive relief claims, the trial court found such remedies were not available because Lateef's administrative mandamus action provided an adequate remedy for resolving the issues he raised. The trial court further found that even if it reached the merits of Lateef's claims, it would declare that subsection 10-3.1310(E) requires "five-sevenths of the council as a whole (5 of 7) to vote in favor of an appeal in order to grant, in whole or in part, any appealed application denied by the Commission" and, given this interpretation, it would deny the request for injunctive relief as improper.

Judgment subsequently was entered in respondents' favor.

## DISCUSSION

On appeal, Lateef challenges only the denial of his writ of administrative mandamus. He argues the proper interpretation of subsection 10-3.1310(E) is that it "requires that five-sevenths of those councilmembers present and voting at the appeal hearing vote in favor of granting the appeal in order for the appellant to prevail on appeal …." Under that interpretation, the city council's four-to-one vote in his favor was sufficient to grant his appeal. He alternatively argues that even if subsection 10-3.1310(E) requires five-sevenths of the seven members of the city council to vote in favor of an appeal, he was denied a fair trial because the recused councilmember and vacant seat were included in the total number of councilmembers used to calculate the number of votes required to grant his appeal.

*Standard of Review*

"The question presented by a petition for writ of administrative mandate is whether the agency or tribunal that issued the decision being challenged 'proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.' [Citation.] 'Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.' " (*Doe v.*

6.

*University of Southern California* (2018) 28 Cal.App.5th 26, 34; see Code Civ. Proc., § 1094.5, subd. (b).)

"In mandate proceedings, courts of appeal review legal questions, including questions of statutory interpretation, de novo." (*Goldstein v. California Unemployment Insurance Appeals Board* (2019) 34 Cal.App.5th 1006, 1013 (*Goldstein*); see *Christensen v. Lightbourne* (2017) 15 Cal.App.5th 1239, 1251 (*Christensen*) ["Interpretation of a statute or regulation is a question of law subject to independent review"].) " '[W]e apply our independent review without reference to the trial court's actions.' " (*Christensen, supra,* 15 Cal.App.5th at p. 1251.)

We also "review the fairness of the administrative proceeding de novo." (*Doe v. University of Southern California, supra,* 28 Cal.App.5th at p. 34; see *Doe v. University of Southern California* (2016) 246 Cal.App.4th 221, 239 [" 'challenge to the procedural fairness of the administrative hearing is reviewed de novo on appeal because the ultimate determination of procedural fairness amounts to a question of law' "].) Code of Civil Procedure section 1094.5, subdivision (b)'s "requirement of a ' "fair trial" ' means that there must have been 'a fair administrative hearing.' " (*Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 96.)

*The Interpretation of Subsection 10-3.1310(E)*

We are asked to interpret subsection 10-3.1310(E): "A five-sevenths vote of the whole of the Council shall be required to grant, in whole or in part, any appealed application denied by the Commission." The issue, as framed by Lateef, is whether this subsection requires an affirmative vote by (1) five-sevenths of those councilmembers present and voting, or (2) five-sevenths of the seven members of the city council. Lateef contends the correct interpretation is the former one, while respondents contend it is the latter.

The rules of statutory construction applicable to statutes are also applicable to municipal ordinances. (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 502; *County of*

*Madera v. Superior Court* (1974) 39 Cal.App.3d 665, 668.)  When interpreting statutory language, " '[w]e begin with the fundamental rule that our primary task is to determine the lawmakers' intent.' [Citation.]  The process of interpreting the statute to ascertain that intent may involve up to three steps. ... [Citations.]  We have explained this three-step sequence as follows: 'we first look to the plain meaning of the statutory language, then to its legislative history and finally to the reasonableness of a proposed construction.' " (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082 (*MacIsaac*).)

"In the first step of the interpretive process we look to the words of the statute themselves. [Citations.]  The Legislature's chosen language is the most reliable indicator of its intent because ' "it is the language of the statute itself that has successfully braved the legislative gauntlet." ' [Citation.]  We give the words of the statute 'a plain and commonsense meaning' unless the statute specifically defines the words to give them a special meaning." (*MacIsaac, supra,* 134 Cal.App.4th at pp. 1082-1083.)  " 'It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed.' " (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998.)  Furthermore, we are not empowered to insert language into a statute, as "[d]oing so would violate the cardinal rule of statutory construction that courts must not add provisions to statutes." (*Ibid.;* see also Code Civ. Proc., § 1858 ["[i]n the construction of a statute ..., the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted ...."].)

We are also mindful, however, that "[o]ur primary goal is to implement the legislative purpose, and, to do so, we may refuse to enforce a literal interpretation of the enactment if that interpretation produces an absurd result at odds with the legislative goal." (*Honig v. San Francisco Planning Dept.* (2005) 127 Cal.App.4th 520, 527.)

Subsection 10-3.1310(E) seems straightforward and unambiguous. It requires a "five-sevenths vote of the whole of the Council," meaning the entire city council, namely seven members. This interpretation is supported by the five-sevenths voting requirement, which by the use of seven in the denominator indicates a council of seven members. Nothing in the ordinance's language suggests that "whole of the Council" means "those councilmembers present and voting," as Lateef proposes.

The California Supreme Court's decision in *Tidewater Southern Railway Company v. Jordan* (1912) 163 Cal. 105, which Lateef relies on, is instructive. There, the court was asked to decide whether a statute that required a corporate resolution creating bond indebtedness to be adopted by "the unanimous vote of its board of directors" required the affirmative vote of either all of the corporation's board members or all board members present at the meeting. (*Id.* at p. 105-106.) In holding that the latter interpretation was correct, the court noted the statute did not call for the " 'unanimous vote of all the directors,' nor the 'unanimous vote of all the members of the board,' " but rather called for the " 'unanimous vote of the board.' " (*Id.* at p. 106.) Thus, the provision looked "to the body constituting a board of directors, rather than to the individuals of whom that board is composed." (*Ibid.*) Therefore, the directors who were present at a meeting, though less than the entire board membership, constituted the board of directors and "a resolution adopted by the affirmative votes of all such directors was 'adopted by the unanimous vote of the board of directors.' "[3] (*Ibid.*)

---

[3] The court in *Tidewater* cited two out-of-state cases in support of the proposition that requiring a unanimous vote of those present and constituting a quorum makes "it impossible for a majority of a mere quorum, which might be a minority of the entire membership, to adopt the resolution, as such minority might do in the absence of any restriction of this nature." (*Tidewater, supra,* 163 Cal. at p. 107.) In one of those cases, *St. Aemilianus Orphan Asylum v. Milwaukee County* (1900) 107 Wis. 80 [82 N.W. 704], the Wisconsin Supreme Court listed examples of when a statute deviates from the common-law rule that a majority of a legislative entity constitutes a quorum, including " 'a majority of all the members entitled to seats in the county board' . . . ; or 'a vote of

Applying the reasoning of *Tidewater* here, a "five-sevenths vote of the whole of the Council" looks not to the body constituting the city council, but rather to the individuals of whom the city council is composed. Otherwise the ordinance would require a "five-sevenths vote of the council," not a "five-sevenths vote of the *whole* of the Council." Any other reading renders the use of the word "whole" surplusage. (*Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1097 [courts should avoid "interpretations that render any language surplusage"]; *People v. United States Fire Ins. Co.* (2012) 210 Cal.App.4th 1423, 1427 ["When interpreting statutory language, the court may neither insert language that has been omitted nor ignore language that has been inserted"].)

Lateef contends that because numerous California statutes use the phrase "all of the members" of a legislative body when the Legislature intends to use the total number of a body's members to calculate the number of votes required, the absence of that phrase in subsection 10-3.1310(E) means that is not what the city intended.[4] Lateef asserts the city was aware of the distinction, as the ordinance that defines a quorum provides: "A majority of *all the members of the Council* shall constitute a quorum at any regular or special meeting of the Council." (§ 2-1.06, italics added.) Lateef claims this shows that when the city intends to apply an ordinance to the total number of members in the city council it clearly knows how to do so, and had it intended subsection 10-3.1310(E) to

---

three-fourths of all the members' . . .; or '*a majority of the whole board*' . . ." (*Id.* at p. 705, italics added.)

[4] Lateef cites to California statutes such as Government Code section 25005, Water Code Appendix section 123-624, Public Utilities Code section 130233, Streets and Highways Code section 31925, and Revenue and Taxation Code section 7286.80. For example, Government Code section 25005 provides: "A majority of the members of the board constitute a quorum for the transaction of business. No act of the board shall be valid and binding unless a majority of all the members concur therein."

require a five-sevenths vote of all the members of the city council, it would have referred to "all the members of the Council."

There is no requirement, however, that the city use "all of the members of the council" when it intends to refer to the entire council. That it did so when defining a quorum does not mean that it intended to require less than the entire council when using "whole of the Council." As we explained above, use of the word "whole" must mean something; otherwise, it is surplusage.

Lateef also contends the plain language of subsection 10-3.1310(E) demonstrates the city intended to require five-sevenths of the votes actually cast because "it requires 'five-sevenths *votes*.' " Lateef asserts this language places the emphasis on votes and those voting, rather than the councilmembers themselves. Lateef, however, misreads the ordinance. It requires "[a] five-sevenths *vote* of the whole of the Council," not five-sevenths *votes*. The ordinance reads like a math problem: five-sevenths vote times the "whole of the Council," or seven councilmembers, equals five votes. The emphasis is not on those voting, but rather on the number of votes required to overturn the commission's denial of an application for a use permit.

Lateef asserts we should look to another ordinance in which the city used the term "whole" in relation to the city council for guidance in interpreting subsection 10-3.1310(E). That ordinance, section 2-2.303, pertains to the creation of the civil service commission and provides for the selection of civil service commission members as follows: "The City Council as a whole, shall appoint by resolution, all of the five members for the five member Commission. The resolution of appointment shall be approved by at least four members of the Council." (§ 2-2.303(C)(2)(a).) Lateef asserts the term "City Council as a whole" in this subsection refers to the quorum of the city council authorized to act on its behalf, not all seven members of the city council, because the next sentence makes clear that only four members must approve the resolution of appointment. From this, Lateef reasons "the whole of the Council" as used in subsection

11.

10-3.1310(E) also refers to the quorum of the city council with the authority to act on its behalf.

The two phrases, however, are used differently. Subsection 2-2.303(C)(2)(a) uses "City Council as a whole" to describe who appoints the members of the civil service commission and spells out how many councilmembers, namely four, must approve the resolution of appointment. In contrast, subsection 10-3.1310(E) uses "whole of the Council" as part of the calculation of the number of votes required to approve a resolution granting an appeal from a commission's denial. In that context, "whole of the Council" is read as the entire city council, not just a quorum.

Subsection 10-3.1310(E) simply cannot be read as Lateef proposes; otherwise, we would have to omit the word "whole." We conclude from its plain language, "whole of the Council" means the entire city council, or all seven members. "If the statutory language is clear and unambiguous, our task is at an end, for there is no need for judicial construction. [Citations.] In such a case, there is nothing for the court to interpret or construe." (*MacIsaac, supra,* 134 Cal.App.4th at p. 1083.)

Even if the ordinance's language were ambiguous, the staff report prepared on the proposed amendment confirms the city intended "whole of the Council" to mean the seven-member council. (*MacIsaac, supra,* 134 Cal.App.4th at p. 1083 [if the text's plain meaning "does not resolve the interpretive decision," the court proceeds to the second step and considers the cannons of statutory construction and "extrinsic aids, including the statute's legislative history"].) According to the staff report, the city decided to amend the ordinance "to acknowledge the seven-member composition of the City Council in its role as the appeal body for Planning Commission actions." Thus, to "more accurately reflect the 2012 transition from a five-member body to a seven-member body," city staff recommended the percentage needed to grant an appeal of a commission decision be changed from four-fifths to five-sevenths. That the percentage was based on the total

12.

number of councilmembers indicates the city intended "the whole of the Council" to include all of them.

Finally, Lateef claims absurd consequences flow from this interpretation of the ordinance. "Even if a statute is unambiguous on its face, it must be interpreted to avoid an absurd result that does not advance the legislative purpose." (*Gray Cary Ware & Freidenrich v. Vigilant Insurance Co.* (2004) 114 Cal.App.4th 1185, 1190, citing *California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340.)[5] Here, the purpose and intent of the ordinance, as stated in the staff report, is to "allow for fair reevaluation of Commission decisions" without restricting "Council reevaluation of a Planning Commission action." Requiring a supermajority of five of seven councilmembers fulfills that purpose.

Lateef argues such a requirement creates an absurd result because an applicant appealing an adverse commission decision could be before the city council with only four councilmembers voting, which is sufficient for a quorum under section 2-1.06, but the appeal would be denied because it would be impossible to receive five votes. In that situation, Lateef contends, section 10-3.1309, which sets forth the right to appeal from an adverse commission decision, would be rendered meaningless. The problem with this

---

[5] Lateef argues it is appropriate to look at the consequences that flow from the city's interpretation of the ordinance, citing to cases applying the rule that where a statute is ambiguous and susceptible to more than one reasonable interpretation, "our task is to select the construction that comports most closely with the Legislature's intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical or arbitrary results." (*Copley Press, Inc. v . Superior Court* (2006) 39 Cal.4th 1272, 1291; see also *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 992 (*DiCampli-Mintz*); *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567.) Since the ordinance is unambiguous, however, we "may determine whether the literal meaning of [an ordinance] comports with its purpose," and need not follow the ordinance's plain meaning when doing so would " 'frustrate[] the manifest purposes of the legislation as a whole or [lead] to absurd results.' " (*California School Employees Assn. v. Governing Board, supra,* 8 Cal.4th at p. 340.)

approach is that to interpret subsection 10-3.1310(E) as Lateef suggests would require us to rewrite the ordinance in contravention of the city's expressed intent. We have "no power to rewrite the [ordinance] so as to make it conform to a presumed intention which is not expressed." (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633; see also *DiCampli-Mintz, supra,* 55 Cal.4th 983, 992 ["court may not, 'under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.' "].)[6] For this reason, we cannot rewrite the statute to avoid the other absurd results Lateef claims flow from interpreting the ordinance to require a five-sevenths vote of the seven-member city council.[7]

In sum, the "whole of the Council" simply cannot be read as "whole of the Council who is present and voting" at the appeal hearing. Instead, "whole of the Council" means the entire seven-member city council. Accordingly, Lateef was required

---

[6] Respondents assert that while section 2-1.06 requires a quorum to do business, the purpose of section 10-3.1310 is to set the rules by the which the city council may grant an appealed application that was denied by the commission. In response, Lateef argues in his reply brief "the City cannot enact an ordinance that increases the number of councilmembers needed 'for transaction of business' from a 'majority of the council' to five." Lateef contends Madera, as a general law city, has no power to override Government Code section 36810, which provides "[a] majority of the council constitutes a quorum for transaction of business," citing *Home Gardens Sanitary Dist. v. City of Corona* (2002) 96 Cal.App.4th 87, 93. Lateef, however, admitted in his opening brief that he "is not seeking to void" subsection 10-3.1310(E) "as being unconstitutional on its face." Instead, Lateef says he is seeking a judicial interpretation by which subsection 10-3.1310(E) "would remain operative." We therefore express no opinion on the constitutionality of subsection 10-3.1310(E) or the City's ability to enact such a voting requirement. As we explain above, we are unable to rewrite the ordinance to comport with Lateef's proposed interpretation.

[7] These purported absurd results include: (1) by counting the recused councilmember and vacant council seat in the total number of councilmember seats used to calculate the number of votes required to grant his appeal, the two seats became in effect "no" votes, and (2) the ordinance would impose a fluctuating minimum vote standard based on the number of councilmembers present and voting.

to obtain five votes in favor of granting his appeal in order to reverse the commission's decision denying his application. Having obtained only four favorable votes, the city council properly denied his appeal.

*Denial of a Fair Hearing*

Lateef contends that if the city's interpretation of the ordinance is correct, he was deprived of a fair hearing because the recused councilmember and vacant council seat were included as councilmembers when determining the number of votes needed to grant his appeal. He claims "it is not fair to count a recused councilmember or a vacant council seat as 'all of the members' because the recused councilmember should have no impact on the appeal and a vacant seat is not a member." He also claims that under section 2-1.15, the city council was required to record the vacant council seat as an affirmative vote.

Code of Civil Procedure section 1094.5, subdivision (b) authorizes the issuance of a writ of administrative mandate where the agency deprived the petitioner of a fair hearing. (*Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1169 (*Clark*).) The right to a fair hearing is violated where, for example, the agency relies on evidence outside the record in reaching its decision (*Pinheiro v. Civil Service Commission for the County of Fresno* (2016) 245 Cal.App.4th 1458, 1467, citing cases) or lacks impartiality (*Clark*, *supra*, at p. 1173).

Lateef does not cite any authority to support his contention that failing to exclude the recused councilmember and the vacant seat when determining the votes needed to prevail deprived him of a fair hearing within the meaning of Code of Civil Procedure, section 1094.5. He cites only to rule 35(a) of the Federal Rules of Appellate Procedure (28 U.S.C.), which governs when a hearing or rehearing en banc may be ordered and provides: "A majority of the circuit judges who are in regular active service and who are not disqualified may order that an appeal or other proceeding be heard or reheard by the court of appeals en banc." Lateef claims that because federal appellate courts do not

include recused members when determining the majority of votes needed to grant an en banc hearing or rehearing, it is unjust for a California governmental entity to include a vacant seat and recused councilmember when determining the number of votes needed to prevail.

We are not convinced. A federal rule regarding en banc hearings has no application to proper voting methods for California governmental entities. Moreover, California is not bound by the Federal Rules of Appellate Procedure. (*Sinnamon v. McKay* (1983) 142 Cal.App.3d 847, 854.)

Under California law, a vacant council seat is included in determining whether a quorum exists. (See *Price v. Tennant Community Services Dist.* (1987) 194 Cal.App.3d 491, 496-497; *The Honorable Leroy G. Shipp,* 94 Ops.Cal.Atty.Gen. 100 (2011).) Thus, it was proper for the city council to include the vacant council seat when determining whether Lateef obtained sufficient votes to grant his application. We reject Lateef's contention the vacant seat must be counted as an affirmative vote under section 2-1.15, which provides that when the city clerk is taking a roll call vote on a resolution and calls "the name of each member present, … [e]ach member shall be recorded as voting 'aye' unless when his or her name is called he or she votes 'no' or declares he or she is not voting," and "[u]nless a member of the Council states he or she is not voting, his or her silence shall be recorded as an affirmative vote."[8] Section 2-1.15 clearly pertains to situations where a councilmember is present at the meeting and when the

---

[8] Section 2-1.15 provides in its entirety: "Except as provided in this chapter, when a vote on any motion is called for, the Mayor or other presiding officer may call for a voice vote and may determine whether any such motion carried or failed. Any member of the Council may call for a roll call vote on any motion. All votes on motions for introduction or passage of any ordinance or resolution shall be called for by the City Clerk by calling the name of each member present, including the Mayor. Each member shall be recorded as voting 'aye' unless when his or her name is called he or she votes 'no' or declares he or she is not voting. Unless a member of the Council states he or she is not voting, his or her silence shall be recorded as an affirmative vote."

16.

councilmember's name is called during a roll call vote, the councilmember remains silent rather than declare he or she is not voting. It is only then that the councilmember's silence is recorded as an affirmative vote. Here, when the roll call vote was taken, the vacant seat was not asked to vote. Therefore, its "silence" cannot be counted as an affirmative vote under section 2-1.15.

With respect to the recused councilmember, the ordinance requires a vote of five councilmembers and there were five councilmembers present at the hearing who were available to vote on Lateef's appeal. Lateef could have requested a continuance of the hearing until the vacant seat was filled to better increase his chance of prevailing. (See *Ursino v. Superior Court* (1974) 39 Cal.App.3d 611, 622 [where city charter required four votes of the five-member appeals board to overturn the department of public works' issuance of a building permit, but only four members were present at appeal hearing due to a board vacancy, appellants were not required to proceed with the hearing; rather, appellants properly requested, and were granted, a continuance with the expectation the vacancy would be filled].)

Moreover, even if the city council should have excluded the recused councilmember from the calculation, Lateef does not prevail. A five-sevenths vote of six councilmembers is a number greater than four, namely approximately 4.29. While Lateef assumes this number should be rounded down to four, we disagree. Since the calculation results in a number greater than four and there cannot be a fractional vote, five affirmative votes would be required, which Lateef did not receive.

In sum, Lateef was not denied a fair hearing. The city council followed subsection 10-3.1310(E) in determining that five votes were required to overturn the commission's decision and that Lateef did not receive the requisite votes. Accordingly, the trial court properly denied his petition for administrative mandamus.

17.

## **DISPOSITION**

The judgment is affirmed.  Costs on appeal are awarded to respondents.

_____
SNAUFFER, J.

WE CONCUR:


_____
HILL, P.J.


_____
DETJEN, J.

18.